**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
DENNIS BALK,

                                                    **MEMORANDUM**
                                                     **AND ORDER**
                                         CV 11-509 (JFB) (AKT)

          Plaintiff,

            - against -

NEW YORK INSTITUTE OF TECHNOLOGY
and INFOTEC CORPORATION,

                Defendants.
-------------------------------------------------------------X
**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.     P**RELIMINARY **S**TATEMENT

       This case arose in the aftermath of an article appearing on March 1, 2008 in *Al-Ayam*, a daily newspaper published in Bahrain.  *See* Pl.'s Second Amended Complaint ("SAC") ¶ 37.  The article stated that a "professor" teaching at New York Institute of Technology's ("NYIT") facility in Bahrain had posted to his class website a controversial cartoon depicting the prophet Mohammed in ragged clothing.  *Id.* ¶ 37.  Purportedly, officials at NYIT knew that the article in *Al-Ayam* referred to the Plaintiff, Dennis Balk ("Plaintiff" or "Balk"), the Director of the Computer Graphics Department at NYIT Bahrain, and that the Plaintiff had not committed the acts for which the article accused him.  *Id.*  Notwithstanding these facts, Plaintiff was terminated from his teaching position at NYIT Bahrain.  *Id.* ¶¶ 75-78.

       Dennis Balk alleges that NYIT had a contract with co-defendant Infotec Corporation ("Infotec") in which Infotec would solicit Bahraini Muslims to operate the NYIT facility in Bahrain.  SAC ¶ 3.  According to the SAC,

               NYIT and Infotec routinely effect illegal discriminatory acts when a
               Western, non-Muslim faculty member is falsely accused of violating

> any norms, mores or values not acceptable to its Muslim clientele by
> discrediting and terminating the Western faculty member and forcing
> the Western faculty member to leave the country for fear of personal
> safety.

SAC ¶ 4.  As a result of Defendants' conduct and Balk's ultimate termination from employment,

Balk has brought claims of discrimination based on race, religion, and national origin in violation

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. against both NYIT and

Infotec.  SAC ¶¶ 1, 59-69.  Plaintiff also alleges breach of contract against NYIT, unlawful

interference of contractual rights against Infotec, and conspiracy to commit fraud against both

Defendants.  *Id*. ¶¶ 71-86, 103-147.

Plaintiff now seeks to compel the appearance of Dr. Mohammed Hussein ("Dr. Hussein"),

who purportedly is now residing in Egypt, for a deposition in New York, pursuant to 28 U.S.C.

§ 1783 (the "Walsh Act").  *See* Pl.'s Mot. [DE 102] at 1; s*ee also* Affidavit of Stephen J. Kloepfer,

Esq., annexed as Ex. "3" to Pl.'s Mot. ("Kloepfer Aff.") ¶ 31.  Dr. Hussein claims to be not only

the Executive Chairman Middle East for NYIT but also the President of Infotec.  Pl.'s Mot. at 1.

The motion is unopposed.

## II.  BACKGROUND

### A.  The Second Amended Complaint

Plaintiff claims that "[w]ithout actual disclosure to prospective teaching applicants or

NYIT Bahrain faculty recruited from Western universities and Western locations, NYIT practices

an illegal discriminatory policy toward any complaint against the Western, non-Muslim faculty by

Muslim students or Muslim faculty."  SAC ¶ 4.  According to the SAC, this policy and practice

"violates all established academic protocols for dealing with complaints against faculty by

students.  *Id.*  The complained of policy is utilized to show Muslim parents and students that "any claimed deviation from Muslim culture will not be tolerated… ."  *Id.*

Plaintiff contends that he was "falsely accused of explaining Western values in a manner purportedly offensive to Muslim students" and was subsequently terminated from employment by Defendants despite providing "exemplary services."  SAC ¶ 5.  Specifically, Plaintiff maintains that Infotec "actively caused articles to be published in local Bahraini newspapers falsely accusing Plaintiff of having posted the highly controversial Danish cartoon insulting the Prophet Mohamed on his website."  *Id.*  Defendants purportedly "engaged in this illegal discriminatory conduct solely based on the fact that Plaintiff's accusers were Muslims and Plaintiff was a Western, non-Muslim and a citizen of the United States."  *Id.*

Infotec is a for-profit corporation incorporated in the Republic of Cyprus and registered by the Ministry of Education of the Arab Republic of Egypt.  SAC ¶ 23.  Infotec provides administrative support services to American undergraduate and graduate university degree programs throughout the Middle East.  *Id.*  As a party to a ten-year agreement with NYIT, Infotec provides administrative services and personnel to NYIT educational programs located in the Middle East, including Bahrain.  *Id.* ¶ 24.  Plaintiff claims that Infotec and NYIT were his joint employers.  *Id.* ¶ 25.  In approximately June 2006, Plaintiff began his teaching duties at NYIT Bahrain pursuant to a written agreement.  *Id.* ¶27.  Throughout his employment with NYIT, Plaintiff attempted to provide an overview of art appreciation in the global art world "such that Plaintiff's teachings were culture neutral and information positive."  *Id.* ¶ 28.

According to the Plaintiff, NYIT and Infotec jointly conspired to defraud him into leaving the Bahrain campus of NYIT as early as February 25, 2008.  SAC ¶¶ 103-104.  During that month,

Plaintiff had a conversation with two NYIT Bahrain students who were soon leaving on a trip to New York. *Id*. ¶ 31. According to the SAC, Plaintiff had an appropriate discussion with the students about the different social norms and treatment of religion in Bahrain and New York City regarding the subject matter of the course Plaintiff had been hired to teach by NYIT. *Id*. Apparently, Plaintiff's discussions "of the different between secular and religious societies reportedly offended the NYIT Bahrain Students." *Id*. On or about February 20, 2008, those students claimed that Plaintiff discriminated against them on the basis of their national origin and religion by "making inappropriate statements" regarding Islam. *Id*. ¶ 105. When Reginald Bragg, the Dean of Students, reportedly heard about the students' complaint, he directed the two students to submit a confidential letter describing the circumstances. *Id*. ¶¶ 32, 106. The two students apparently prepared the letter and circulated it to the staff of NYIT and to the Royal Family of Bahrain. *Id*. ¶ 32. Dean Bragg forwarded the letter to NYIT Bahrain Campus Dean Damon Revelas who received it on February 24, 2008. *Id*. ¶ 106. Dean Revelas informed Plaintiff Balk of the students' complaint that same day. *Id*. ¶ 107. The next day, February 25, 2008, Plaintiff wrote a letter to Dean Revalas responding to the accusations of the two students, informing the Dean that there had been a "misunderstanding." *Id*. ¶ 108. On or about the same date, Plaintiff met with Dean Revelas, Dean Bragg, Professor Moade and the two complaining students, at which time Plaintiff read aloud his letter responding to the allegations. *Id.* ¶ 109. Plaintiff maintains that there was an agreement that the students would consider "drafting a letter recounting the allegations" and "general apologies" were made. *Id*.

The SAC asserts that Dr. Hussein gave instructions to NYIT Bahrain Campus Dean, Damon Revelas, as well as NYIT Dean of Students, Reginald Bragg, to investigate the allegations

made against by the two students.  *Id.* ¶ 25(b)(i).  Plaintiff contends that Dr. Hussein, through

Ahmed Fouad, an Infotec employee and Vice Chairman/Director of Admissions at NYIT Bahrain,

"reportedly directed" Dean Revelas to ensure that Plaintiff was "banned from the NYIT Bahrain

campus."  *Id.* ¶¶ 25(b)(ii), 104.

On February 25, 2008, Fouad sent a memorandum to Dean Revelas, stating as follows:

> After the students' written complaint and the investigation
> concerning Mr. Balk's unexceptional [sic] behavior towards the
> Islamic religion and the Kingdom of Saudi Arabia, Dr. Mohamed
> Hussein, Executive Chairman has come to a decision to banned [*sic*]
> Mr. Balk from the NYIT Campus.
>
> Please be informed that Mr. Balk is forbidden from entering the
> campus until further notice, he will not be permitted to teach his
> courses anymore, or contact any students.

SAC ¶ 110.  Also on February 25, 2008, Dr. Hussein e-mailed NYIT President Dr. Edward

Guiliano stating:

> …We had a complain [sic] form some of the students against Dennis
> Balk (Faculty hired by NYIT, NY for Computer Graphics).  They
> complain about rude remarks against Islam, Quran and Prophet
> Muhammad.  In light of this matter, I've given instructions to the
> Dean, Associate Dean and Student Dean to investigate what has
> happened with Dennis and the students.  Dennis Balk has denied and
> stated that the students misunderstood.  Students had started to
> complain outside the campus which means bad reputation for the
> University.
>
> I think that Dennis is lying, hence I gathered evidence which shows
> that he has been against Islam for quite a long time.  All this
> information is present in his website and he had discriminated the
> students and staff [*sic*] for the past 2 years.  Furthermore, to have a
> successful program we have invested approximately $200,000 for
> equipment and software.
>
> Now we have this problem and i've [*sic*] to stop him from coming to
> the campus before we have more problems with the Ministry of
> Education, Students, Government and before this is printed in the

> media. This guy has to be removed immediately from the county
> before they put him in jail. […]

*Id*. ¶ 111. Plaintiff claims that President Guiliano and Dr. Hussein, on behalf of NYIT and Infotec, agreed to have Plaintiff removed from Bahrain no later than February 26, 2008. *Id*. ¶ 112.

Following the February 25, 2008 meeting between Dean Revelas, Dean Bragg, Professor Moade and the two students, Plaintiff spoke with Dean Revelas and was informed that Dr. Hussein had become aware of the students' complaint and that Dr. Hussein was in Bahrain and "extremely concerned" about the spread of the allegations against Plaintiff. SAC ¶ 113. Plaintiff received no indication that he was to be escorted out of Bahrain. *Id*.

On February 29, 2008, Dr. Hussein called Plaintiff on behalf of Infotec and NYIT to inform Plaintiff that he would have to leave Bahrain for a "period of two to three weeks." SAC ¶ 128. Dr. Hussein informed Plaintiff that Infotec and NYIT would pay for Plaintiff's travel expenses out of Bahrain and that Plaintiff could "return after two or three weeks." *Id*. However, Plaintiff alleges that Dr. Hussein was aware that the accusations against him were false. *Id*.

On March 1, 2008, the Bahrain Daily Newspaper *Al-Ayam* published an article claiming that a "professor," which Plaintiff asserts referred to him, "had posted to his class website the controversial Danish cartoon depicting the prophet Mohammed in ragged clothing (the 'Danish cartoon')." SAC ¶ 37. Plaintiff asserts that everyone at NYIT knew that the article referred to Plaintiff and that its contents were false. *Id*. The article also noted that NYIT Bahrain students were preparing a petition to have Plaintiff removed from NYIT, whereas Plaintiff claims that certain students had, in fact, signed a petition in support of his retention at NYIT. *Id*.

Plaintiff states that, on March 2, 2008, Dr. Hussein demanded he "immediately cease providing services for NYIT Bahrain and insisted that Plaintiff leave Bahrain immediately on the

next available flight, for which Dr. Hussein had already made arrangements." SAC ¶ 35. Plaintiff states that Dr. Hussein "assured" him that he was aware that the reports about him in the press were "unfounded" and that "everything was resolved." *Id*. Dr. Hussein advised Plaintiff about a conversation he had with NYIT Bahrain students and high-level staff, including Dean Revelas, Dean Reginald, and NYIT Vice President of Global Academic Programs, Dr. William Cyrus Reed, which "resolved all issues" concerning the students' complaint. *Id*. Plaintiff alleges that Dr. Hussein told Plaintiff that he "must leave 'for a couple of weeks until the incident was blown over'." *Id*.

Plaintiff claims that Dr. Hussein's staff member then accompanied him to an airport in Bahrain and "escorted him to the departure gate via special procedures that allowed him to skip lines and expedite customs." SAC ¶ 39. Plaintiff maintains that he was not informed of his destination and was advised to keep his trip a "secret and speak to nobody when he arrived at his then unknown destination." *Id*.

The SAC alleges that counsel for NYIT, on behalf of both NYIT and Infotec, "incorrectly stated" that on March 2, 2008, Plaintiff left Bahrain on his own accord "out of concern for his own personal safety." SAC ¶ 132 (internal citation and quotations omitted). NYIT counsel stated that "Plaintiff's own conduct prevented himself from securing a residence visa to return to Bahrain which, in turn, prevented him from completing his teaching duties in Bahrain." *Id*. (same). Plaintiff states that he "continued to reasonably and justifiably rely" on Defendants' false statements until March 18, 2008, at which point Dean Revelas informed him that Dr. Hussein and Dr. Vogt decided that Plaintiff would not be returning to Bahrain. *Id*. ¶ 137. Plaintiff Balk is

currently a professor of fine arts and computer graphics providing academic services in Southeast Asia. *Id.* ¶ 20.

In the instant action, Plaintiff has asserted causes of action under Title VII for discrimination based on national origin, race, and creed against both NYIT and Infotec as joint employers, breach of contract against NYIT, intentional interference with contractual rights against Infotec, and conspiracy to defraud against both NYIT and Infotec. *See generally* SAC.

### B.     The Instant Motion to Compel

On September 10 and 11, 2012, Plaintiff's counsel served NYIT with three notices of deposition for a September 24, 2012 deposition of Dr. Hussein to be taken via telephone conference pursuant to Federal Rule of Civil Procedure 30(b)(4). *See* Pl.'s Mot. at 1. The three notices consisted of: (1) a notice to take the deposition of NYIT through managing agent Dr. Mohammed Hussein; (2) a notice to take the deposition of NYIT through managing agent Infotec; and (3) a notice to take the deposition of Infotec through its corporate officer Dr. Hussein. *Id.* In a September 13, 2012 e-mail, counsel for NYIT acknowledged receipt of the three notices and responded as follows:

> Please be advised that defendant New York Institute of Technology ("NYIT") objects to the notice of deposition that purports to notice the deposition of NYIT by Mohamed Hussein in his capacity of "Executive Chairman NYIT Middle East" and/or "Executive Chairman M.E." and/or Chair, Middle East." To the extent that Dr. Hussein at one time used any of those titles, he has been explicitly not authorized to use those or any title including "NYIT" since approximately January 2010. Dr. Hussein has no relationship with NYIT, except in his role as a principal of Infotech (sic) Corporation, which has a contractual relationship with NYIT.

*See* Sept. 13, 2012 E-mail of Neil Sparber, Esq. to Ridley Whitaker, Esq., annexed as Ex. "1" to Pl.'s Mot. [DE 102-1]. However, NYIT did not refuse to participate in Dr. Hussein's

September 24, 2012 noticed deposition in his capacity as Infotec corporate officer. *Id.*

In his September 14, 2012 response, Plaintiff's counsel e-mailed Dr. Hussein directly, using an e-mail address provided to Plaintiff by NYIT's counsel, to request that he voluntarily appear for a deposition and confirm his appearance by 5 p.m. E.D.T. on September 17, 2012. *See* September 14, 2012 E-mail of Ridley Whitaker, Esq. to Dr. Mohamed Hussein, annexed as Ex. "2" to Pl.'s Mot. [DE 102-2]. Plaintiff's counsel also attached the three notices of deposition to his September 14, 2012 e-mail to Dr. Hussein. *Id.* Plaintiff's counsel advised Dr. Hussein of his right to "obtain counsel with respect to these notices of deposition and to have counsel appear with [him] at the deposition." *Id.* Dr. Hussein was advised that a failure to respond to Plaintiff's counsel concerning the deposition notices would lead Plaintiff's counsel to seek Court intervention "to issue the appropriate court order" and "cause a subpoena to be issued compelling" Dr. Hussein's appearance. *Id.* After receiving no response by September 17, 2012, Plaintiff's counsel again e-mailed Dr. Hussein on September 18, 2012 to request his voluntary appearance for a deposition using the reported e-mail address provided by NYIT counsel as well as another e-mail address "disclosed for the first time at the deposition of Infotec's New York-based agent/executive Robert Vogt on September 18, 2012." *Id.*

On September 20, 2012, after reviewing a civil lawsuit filed in New York County Supreme Court by NYIT against Infotec as well as Dr. Hussein and Robert Vogt, Plaintiff's counsel learned that Dr. Hussein is a United States citizen. *See* Pl.'s Mot. at 2. In that state action, former NYIT General Counsel, Stephen J. Kloepfer, submitted an affidavit attesting to the fact that Dr. Hussein is a dual citizen of the United States and Egypt. *See* Affidavit of Stephen J. Kloepfer, Esq. in Opposition to Defendants' Motion to Dismiss, annexed as Ex. "3" to Pl.'s Mot. ("Kloepfer Aff.")

[DE 102-3] ¶ 31.  In the instant action, Dr. Hussein has submitted a June 27, 2011 declaration stating under penalty of perjury that he has "not even set foot in New York in years."  *See* Declaration of Mohamed Yossry Hussein in Support of Motion to Set Aside Default and to Dismiss, annexed as Ex. "4" to Pl.'s Mot. ("Hussein Decl.") [DE 102-4] ¶ 9.  However, Plaintiff's counsel contends that Dr. Hussein was personally served with the summons and complaint in the NYIT state court action as recently as June 27, 2011.  *See* Pl.'s Mot. at 2.  Citing the deposition testimony of Dr. Vogt, an Infotec consultant living in New York, Plaintiff's counsel asserts that, contrary to Dr. Hussein's contentions, Infotec conducts business in the United States and also maintains an office in the NYIT Old Westbury campus.  *Id.*  Dr. Vogt is characterized as an Infotec "senior executive" in Kloepfer's state court affidavit.  Kloepfer Aff. ¶ 8.

On September 24, 2012, Dr. Hussein failed to appear in New York for his deposition despite Plaintiff's counsel having followed the procedures set forth in the notices to initiate the telephone conference.  *See* Pl.'s Mot. at 2.  After waiting one-half hour for Dr. Hussein to appear by telephone, Plaintiff's counsel ultimately noted Dr. Hussein's default on the record with regard to the three notices.  *Id.*

Plaintiff filed the instant motion on September 27, 2012 seeking to compel Dr. Hussein to appear for his deposition in New York pursuant to the Walsh Act.  DE 102; 28 U.S.C. § 1783.  The Defendants have not opposed the motion.

## III.  LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure provides for the discovery of relevant, non-privileged information which "appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b).  "'Relevance' under Rule 26 'has been construed broadly to

encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case.'" *Oppenheimer Fund, Inc.*, 437 U.S. 340, 351 (1978); *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992) (noting that the scope of discovery under Rule 26(b) is "very broad"); *Greene v. City of New York*, No. 08 Civ. 243, 2012 WL 5932676, at *3 (E.D.N.Y. Nov. 27, 2012) (citing *Crosby v. City of New York*, 269 F.R.D. 267, 282 (S.D.N.Y. 2010) (explaining that Rule 26 must be construed broadly to include any matter that has, or could reasonably have, bearing on any issue that is, or may be, in the case); *Barrett v. City of New York*, 237 F.R.D. 39, 40 (E.D.N.Y. 2006) (noting that the information sought "need not be admissible at trial to be discoverable.").

Notwithstanding the foregoing principles, however, "[t]he party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Barbara v. MarineMax, Inc.*, No. 12-CV-368, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013) (citing *Wells Fargo Bank, N.A. v. Konover,* No. 3:05CV1924, 2009 WL 585430, at *5 (D.Conn. Mar. 4, 2009); *Evans v. Calise,* No. 92 Civ 8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994)). In general, "[a] district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina,* 695 F.3d 201, 207 (2d Cir. 2012) (citing *In re Agent Orange Prod. Liab. Litig.,* 517 F.3d 76, 103 (2d Cir. 2008)); *Barbara*, 2013 WL 1952308, at *3 ("Courts afford broad discretion in magistrates' resolution of discovery disputes.").

## A.     The Walsh Act

Since Plaintiff seeks to compel the deposition testimony of a U.S. citizen residing abroad, the Court reviews the instant motion in accordance with the Walsh Act.  *See* 28 U.S.C. § 1783. Under the Walsh Act,

> [a] court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it . . . of a national or resident of the United States who is in a foreign country . . . if the court finds that particular testimony . . . is necessary in the interest of justice, and . . . that it is not possible to obtain his testimony in admissible form without his personal appearance . . . .

28 U.S.C. § 1783(a); *Estate of Ungar v. Palestinian Auth.*, 412 F. Supp. 2d 328, 332 (S.D.N.Y. 2006) (explaining the Walsh Act).  In addition, § 1783(b) requires that service of a Walsh Act subpoena must be made in compliance with the "Federal Rules of Civil Procedure and that the serving party pay the necessary travel costs of the witness, which are to be determined by the court."  *Ungar*, 412 F. Supp. 2d at 332 (citing 28 U.S.C. § 1783(b)).  Accordingly, two elements must be satisfied before a Court can issue a subpoena to a U.S. citizen living "outside the territorial jurisdiction of the United States":  (1) the particular testimony is necessary in the "interest of justice" and (2) it is not possible to obtain the witness's testimony in admissible form without his or her personal appearance.  *Id.* at 333 (citing 28 U.S.C. § 1783(a)).  "'The decision to issue a subpoena under this statute is left to the sound discretion of the court.'"  *MedImmune, LLC v. PDL Biopharma, Inc.*, No. 08 Civ. 5590, 2010 WL 2179154, at *1 (quoting *Klesch & Co. Ltd. v. Liberty Media Corp.,* 217 F.R.D. 517, 523 (D.Col. 2003).

With respect to the "interest of justice" prong, courts have found that this element must be "'considered in light of the circumstances of the particular case and, more importantly, the posture of the case when the issue arises.'"  *Ungar*, 412 F. Supp. 2d at 333 (quoting *Klesch*, 217 F.R.D.

517).  Citing the legislative history of § 1783, the court in *Ungar* found that "[t]he essence of the

legislative history is clear:  the courts have the power to subpoena a United States citizen outside

the jurisdiction of the United States when a 'compelling reason' exists"  (internal citation omitted).

*Id*. at 334.  Specifically, in *Ungar*, the court noted that

> Section 1783's legislative history explains that…when considering
> the propriety of the issuance of a subpoena under § 1783, the court
> should consider a multitude of factors, including "the nature of the
> proceedings, the nature of the testimony or evidence sought, the
> convenience of the witness or the producer of the evidence, the
> convenience of the parties, and other facts bearing upon the
> reasonableness of requiring a person abroad to appear as a
> witness… ."

*Id*. at 333-34 (citing S. REP. NO. 88-1580, at 10 (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782,

3791 (legislative history of predecessor section to 28 U.S.C. § 1783)).  Moreover, in *S.E.C. v.

Sabhlok*, No. 08 Civ. 4238, 2009 WL 3561523, at *3 (N.D. Cal. Oct. 30, 2009), the court

explained that "[t]estimony is 'necessary in the interest of justice' if it is relevant under the liberal

standards set forth in Federal Rule of Civil Procedure 26(b)" (citing *SEC v. Sandifur,* No. 05 Civ.

1631, 2006 WL 3692611, at *4 (W.D.Wash.2006)).

        In assessing the second prong - - whether there are potentially alternative methods to obtain

testimony - - courts analyze whether it is practical to obtain the information sought from the

witness.  *See CSI Inv. Partners II, L.P. v. Cendant Corp.*, No. 00 Civ. 1422, 2006 U.S. Dist.

LEXIS 11014, at *14 (S.D.N.Y. Mar. 15, 2006).  "Subpoenas may be issued when it is

'impractical' to obtain the information." *Sandifur*, 2006 WL 3692611, at *4 (citing *CSI Inv.

Partners II*, 2006 U.S. Dist. LEXIS 11014, at *14).  "Sheer impossibility is not required."  *Id*.

"Impracticality occurs, for example, where resort to alternative methods is unlikely to produce the

relevant evidence in time to meet impending discovery deadlines."  *Id*. (noting that it was

impractical for plaintiff to effect service under the Hague Convention in the "context of the looming discovery deadline and overall trial schedule.")

A subpoena issued under the Walsh Act must be served in compliance with Federal Rule of Civil Procedure 4(f). 28 U.S.C. § 1783(b); *Sabhlok*, 2009 WL 3561523, at *5; *Ungar*, 412 F.Supp.2d at 334-35. Under FED. R. CIV. P. 4(f)(1), "service of process upon an individual outside any judicial district of the United States must be in conformity with an internationally agreed upon means, such as those authorized by the Hague Convention." *Ungar*, 412 F.Supp.2d at 335.

**IV.    DISCUSSION**

As a preliminary matter, the Court notes that there has been no dispute presented regarding Dr. Hussein being a U.S. citizen and, accordingly, he is subject to the Walsh Act. *See* 28 U.S.C. § 1783(a); Kloeper Aff. ¶ 31. In fact, the Kloepfer Affidavit affirms that Dr. Hussein is a "citizen of the United States." Kloepfer Aff. ¶ 31. In light of Defendants' having elected not to submit any opposition to Plaintiff's motion to compel, the Court accepts for purposes of this motion the fact that Dr. Hussein possesses U.S. citizenship and is within the purview of the Walsh Act. *See* 28 U.S.C. § 1783(a).

**A.    Interest of Justice**

Plaintiff maintains that Dr. Hussein's testimony is required in the "interest of justice" because it is relevant, necessary and "bears directly on the key issues in this case." Pl.'s Mot. at 2. As the President of Infotec, Dr. Hussein is, according to the SAC, the party responsible for providing instructions to NYIT Bahrain Dean Revelas and NYIT Dean of Students Bragg to investigate the allegations made against Plaintiff Balk by two students enrolled at NYIT Bahrain. *Id*.; SAC ¶ 25(b). Further, Plaintiff submits that Dr. Hussein banned him from NYIT Bahrain on

February 25, 2008 and required him to leave the country following the publication of a local newspaper article "falsely linking" Plaintiff to the controversial Danish cartoons. *Id*. 2-3; SAC ¶¶ 35, 110. Acting on behalf of Infotec, Dr. Hussein "conspired with NYIT" and defrauded Plaintiff, unjustifiably forcing him to leave Bahrain. *Id*. at 3 (citing SAC ¶ 103). As such, Plaintiff contends that Dr. Hussein is a "key player in the events forming the basis" of Plaintiff's claims against Defendants and his testimony is necessary in the "interest of justice." *Id*. at 2-3.

The Court agrees and finds that Dr. Hussein's deposition is necessary in the "interest of justice" within the meaning of the Walsh Act. *See* 28 U.S.C. § 1783. Dr. Hussein is at the center of many of the allegations asserted against NYIT and Infotec in this action. *See generally* SAC. For example, Plaintiff claims that Dr. Hussein "reportedly directed" NYIT Bahrain Campus Dean Revelas, through Infotec employee Ahmed Fouad, that Plaintiff was to be "banned from the NYIT Bahrain campus." SAC ¶ 25(b)(ii). In Fouad's February 25, 2008 letter to Dean Revelas, Fouad wrote that "Dr. Mohamed Hussein, Executive Chairman has come to a decision to be banned [*sic*] Mr. Balk from the NYIT Campus" following the investigation into the NYIT Bahrain students' complaint about the Plaintiff. *Id*. ¶ 110. Purportedly, Dr. Hussein e-mailed NYIT President Guiliano stating, *inter alia*, that there have been complaints by students that Plaintiff has made "rude remarks against Islam, Quran and Prophet Muhammad," which Plaintiff denied. *Id*. ¶ 111. In addition and as previously noted, Dr. Hussein wrote to President Guiliano that he believed "Dennis is lying" and gathered evidence showing that Plaintiff had "been against Islam for quite a long time." *Id*. In closing his e-mail to President Guiliano, Dr. Hussein wrote that Plaintiff had to be "removed from the county before they put him in jail. […] *Id*.

On February 29, 2008, Dr. Hussein informed the Plaintiff that he would be required to leave Bahrain for "two to three weeks," even though Hussein acknowledged that he understood the allegations against Plaintiff were false. *Id*. ¶ 128. Notwithstanding Dr. Hussein's representations to the Plaintiff, after the publication of the March 1, 2008 article in the Bahrain newspaper accusing a professor of posting to his class website the controversial Danish cartoon about the Prophet Mohammed, Dr. Hussein orchestrated Plaintiff's sudden departure from Bahrain – and from employment at NYIT Bahrain – the very next day. *Id*. ¶¶ 35-37. A member of Dr. Hussein's own staff secreted Plaintiff to the Bahrain airport and escorted him to the departure gate "via special procedures that allowed him to skip lines and expedite customs." *Id.* ¶ 39. Plaintiff was not even advised of his destination and was told by Hussein that he had no time to gather his belongings or even say goodbye to anyone. *Id.* ¶¶ 38-39. In light of the numerous allegations directly involving Dr. Hussein with the claims at issue, the Court finds that Dr. Hussein's testimony is unquestionably "relevant under the liberal standards set forth in Federal Rule of Civil Procedure 26(b)." *Sabhlok*, 2009 WL 3561523, at *3 (citing *Sandifur,* 2006 WL 3692611, at *4); *see Klesch*, 217 F.R.D. at 524 (finding that the "the requested subpoena [under the Walsh Act] is consistent with the liberal discovery contemplated by Rule 26 and is, therefore, necessary in the interest of justice.").

Additionally, the Court notes that Dr. Hussein has appeared in the United States as recently as June 27, 2011 to accept personal service of a summons and complaint in connection with a separate state court action. *See* Pl.'s Mot. at 2. Moreover, Dr. Hussein's company, Infotec, maintains office space at the NYIT campus in Westbury, New York, which Dr. Hussein affirmed is staffed by Dr. Vogt, who "does some consulting work" for Infotec. *Id*. (citing Hussein Decl. ¶ 9

n.1).  Defendant Vogt was previously employed by NYIT until he resigned in 2007, whereupon he was immediately hired by Dr. Hussein.  *See* Kloepfer Aff. ¶ 8.  Vogt is a senior executive and minority shareholder in Infotec and "continues to be Hussein's 'right hand man.'"  *Id*. ¶ 8.  These factors, combined with Dr. Hussein's integral role in the activities and conduct underlying the SAC, provide additional weight for the exercise of the Court's discretion in favor of the issuance of a subpoena compelling Dr. Hussein to appear for a deposition in the United States in compliance with the Walsh Act.  *See MedImmune*, 2010 WL 2179154, at *1; *see also Sabhlok*, 2009 WL 3561523, at *8 (noting that if the witness can find time to pass through the U.S. "repeatedly for business, and make whatever arrangements are necessary for the needs of his family, then he cannot reasonably assert family hardship as justification to decline to appear for deposition in the U.S.").

Several courts sitting in and outside the Second Circuit have ordered the issuance of subpoenas pursuant to the Walsh Act in civil actions where the testimony of U.S. citizen witnesses residing abroad is necessary to advance the "interest of justice."  For example, in *Ungar*, judgment creditors representing the estate of a U.S. couple murdered abroad in Israel sought to compel the testimony of an Egyptian telecommunications company chairman in an effort to establish the court's jurisdiction over defendant Palestinian Authority's debts and assets "and thus use such funds to satisfy the outstanding default judgment."  *Ungar*, 412 F. Supp. 2d at 330.  Plaintiffs in *Ungar* asserted that the company owed the Palestinian Authority "at least tens of millions of dollars, and probably well over a hundred million dollars."  *Id*. (internal citation and quotations omitted).  As a result, the court in *Ungar* issued a subpoena pursuant to 28 U.S.C. § 1783(a) compelling the testimony of the chairman, a U.S. citizen, "in an ostensible effort to re-litigate

whether this Court has personal jurisdiction" over the telecommunications firm.  *Id*. at 330, 334.

The court in *Ungar* found that "there exists a 'compelling reason' to issue the subpoena" to capture

the U.S. citizen's testimony "for the purposes of establishing required minimum contacts for valid

personal jurisdiction over" the telecommunications firm.  *Id*. at 334.  Like *Ungar*, Plaintiff's

justification to compel Dr. Hussein's deposition in New York is in furtherance of the prosecution

of his claims and the "interest of justice."  *Id.; see CSI Inv. Partners II*, 2006 U.S. Dist. LEXIS

11014, at *14 (finding no error in magistrate judge's issuance of a subpoena compelling

defendant's former employee to appear for a deposition in England pursuant to the Walsh Act).

Likewise in *Sabhlok*, the court found that the proposed witness's testimony was "relevant

and necessary in the interest of justice because it bears directly on the key issues" of the case.

*Sabhlok*, 2009 WL 3561523, at *3.  The SEC in *Sabhlok* alleged that the foreign witness

"delegated the authority to grant stock options" which were ultimately "backdated" and

participated in discussions "regarding altering stock option grant dates and related compensation

charges."  *Id*.  The court found that the proposed witness was an "undisputed key actor in the

option granting processes" and would "provide critical testimony on those processes."  *Id*.

Similarly, Dr. Hussein is an "undisputed key actor" in the asserted discrimination, conspiracy to

defraud, and intentional interference with contractual rights claims alleged by Plaintiff, especially

in light of Dr. Hussein's role as President of Infotec and Executive Chairman, NYIT Middle East.

*See* SAC ¶ 104.  The SAC reflects the individual actions referenced above which were taken by

Dr. Hussein and which were essential to the termination of Plaintiff's employment as well as his

hasty departure from Bahrain.  Consequently, there is a "compelling reason" for Plaintiff to secure

Dr. Hussein's testimony.  *See Ungar*, 412 F. Supp. 2d at 333; *see also GMA Accessories, Inc. v.*

*BOP, LLC*, No. 07 Civ. 3219, 2008 U.S. Dist. LEXIS 96998, *8 (S.D.N.Y. Nov. 19, 2008) (issuing

Walsh Act subpoena in civil action permitting plaintiff to obtain deposition of non-party witness

residing in Argentina since the "testimony is necessary in the interest of justice").

### B. Not Possible to Obtain Testimony

According to Plaintiff, "[u]nless Dr. Hussein is ordered to appear for his deposition in New

York," Plaintiff will be "unable to obtain sworn testimony concerning Dr. Hussein's actions and

decisions on behalf of Infotec and as a managing agent for NYIT." *See* Pl.'s Mot. at 3. Plaintiff

professes that he "cannot obtain Dr. Hussein's testimony in any other form since Infotec, the

defendant in this action of whom Dr. Hussein is the President has 'defaulted' in this action as of

April 9, 2012, for failing to obtain new counsel following the withdrawal of Infotec's prior

counsel." *Id*.[1]

In *Sandifur*, the court issued an order pursuant to the Walsh Act, notwithstanding the fact

that the "proposed witness had previously been deposed by the SEC as part of its investigation, and

other witnesses who had also reviewed the mortgage applications at the core of the SEC's case had

already been deposed." *Sabhlok*, 2009 WL 3561523, at *4 (citing *Sandifur*, 2006 WL 3692611, at

*2). In issuing the subpoena, the court in *Sandifur* found that "the witness's prior deposition

transcript and testimony by other witnesses were not a substitute for the witness's testimony." *Id*.

(citing *Sandifur*, 2006 WL 3692611, at *4). Similarly, in *Sabhlok*, the court found that the

---

[1] By Order, dated April 19, 2012, Judge Bianco granted Plaintiff leave to file a Second Amended Complaint and held, *inter alia*, that "[i]f defendant Infotec does not retain counsel and file an answer within the time period required under the Federal Rules of Civil Procedure after receiving service of the Second Amended Complaint, plaintiff may move for default judgment on the Second Amended Complaint with respect to defendant Infotec." DE 82. On March 13, 2013, the Clerk of the Court entered a Certificate of Default against Defendant Infotec as to Plaintiff's First and Second Amended Complaints pursuant to Rule 55(a) of the Federal Rules of Civil Procedure based upon Infotec's failure to appear or otherwise defend this action. DE 122. On August 15, 2013, Plaintiff filed a motion for default judgment against Infotec, and that motion is currently pending before Judge Bianco. DE 129.

proposed witness's testimony could be compelled under the Walsh Act where the witness provided "no prior substantive testimony" and no "documents or comparable witnesses" could substitute for the witness's own testimony. *Id.*

Similarly, in *CSI Inv. Partners II*, the court found that the proposed witness's testimony could not be obtained in another manner, in view of both the looming discovery deadline and the impracticality of defendants' proposal that testimony be elicited via procedures set forth in the Hague Convention. *CSI Inv. Partners II*, 2006 U.S. Dist. LEXIS 11014, at *14. Moreover, the court rejected defendants' suggestion that the witness's testimony be taken from a previous criminal matter in lieu of a fresh deposition. *Id.* at *15. After considering numerous unsuccessful attempts by the parties to have the overseas witness in Belgium voluntarily produce informal discovery, the court in *MedImmune* concluded plaintiff demonstrated that it was not possible to obtain the sought after testimony without the issuance of a Walsh Act subpoena. *MedImmune*, 2010 WL 2179154, at *1.

Based upon the representations in Plaintiff's moving papers and the procedural posture of this action, the Court finds that it is not possible for Plaintiff to obtain Dr. Hussein's testimony without the Court's issuance of a subpoena pursuant to the Walsh Act. *See Ungar*, 412 F. Supp. 2d at 333. As detailed in the motion, on September 10 and 11, 2012, Plaintiff served NYIT's counsel with three notices for Dr. Hussein's deposition in his capacity as managing agent of NYIT, managing agent of Infotec, and corporate officer of Infotec. Pl.'s Mot. at 1. The deposition was to be taken via telephonic conference in accordance with Federal Rule of Civil Procedure 30(b)(4) and Local Civil Rule 30.2. *Id.* On September 14, 2012, Plaintiff served the notices upon Dr. Hussein via e-mail, requesting that Dr. Hussein confirm by September 17, 2012 whether he would

voluntarily appear for his deposition. *Id.* When Hussein failed to respond by the given date,

Plaintiff then e-mailed Hussein at two e-mail addresses, ultimately to no avail. *Id.* at 1-2. On

September 24, 2012, Plaintiff initiated the telephonic procedures set forth in the deposition notices

and, despite counsel waiting one-half hour, Dr. Hussein failed to appear, causing Plaintiff to note

Dr. Hussein's default on all three depositions. *Id.* at 2. Moreover, on March 13, 2013, the Clerk of

the Court entered a Certificate of Default against Infotec in light of its failure to appear or

otherwise defend this action. *See* DE 122.[2] Since Infotec's counsel had previously been relieved

and in view of Infotec's failure to retain new counsel, any possibility that Dr. Hussein's deposition

might be compelled by communication with his counsel in this action has been eliminated. *See* DE

77. In addition, NYIT counsel's has formally objected to Dr. Hussein's association with NYIT as

Executive Chairman Middle East as of 2010 and only agreed to attend the September 24, 2012

deposition since Dr. Hussein was being deposed in his capacity as corporate officer for Infotec.

*See* Pl.'s Mot. at 1 & n.1. In light of the foregoing circumstances, the issuance of a subpoena in

accordance with the Walsh Act is the only practical method by which Plaintiff may obtain

Dr. Hussein's testimony.

### C. Service of Process

Plaintiff argues that service of any subpoena issued by this Court upon Infotec and Dr.

Hussein "may properly be effected at an Infotec office in New York or on Infotec's New York-

---

[2]  A prior certificate of default against Infotec was entered on June 20, 2011. DE 17. That notation of default was later vacated by stipulation of the parties. DE 35. Thereafter, Infotec's counsel moved to withdraw from the case and Judge Bianco granted that motion. *See* DE 72, 77. In March 2012, Plaintiff moved for leave to file an Amended Complaint. DE 80. Judge Bianco granted the motion and ruled that if Infotec did not retain counsel and file an Answer within the time period required, Plaintiff could move for a default judgment with respect to Infotec. DE 82. Infotec never appeared and did not retain counsel. *See* DE 114. The Clerk of the Court noted Infotec's default on the record on March 13, 2013, pursuant to Fed. R. Civ. P. 55(a) and Local Civil Rule 55.1. *See* DE 122. Plaintiff has moved for a default judgment against Infotec. *See* DE 129.

based agent/executive in New York." Pl.'s Mot. at. 3.  In light of Infotec's default in the instant action and Dr. Hussein's failure to acknowledge receipt of documents in a separate state court action, Plaintiff contends that "substituted service upon Infotec and Dr. Hussein under FED. R. CIV. P. 4(e) and 4(f)(3) at the address in New York provided by Infotec for prior service, as well as by FedEx International Priority to Dr. Hussein's reported address in Egypt, is proper in this case." *Id.*; Hussein Decl. ¶¶ 15-17.  However, Plaintiff acknowledges that Dr. Hussein's purported New York agent, Dr. Vogt, wrote to Plaintiff:  "I am no longer authorized to accept any communications or documents on behalf of Infotech [*sic*] Corporation, and I will not forward to Infotech [*sic*] any communications sent to me, so please send any communications or documents directly to Infotech [*sic*]."  *Id.* at 3 & n.3; *see* April 16, 2012 Letter of Robert C. Vogt to Ridley M. Whitaker, annexed to Pl.'s Mot. as Ex. "7."  Although the Court notes that service of process may be effected on an individual in a foreign county pursuant to FED. R. CIV. P. 4(F)(3), namely, "by other means not prohibited by international agreement, as the court orders," the absence of an agent, counsel, or any other individual who can accept service on behalf of Infotec or Dr. Hussein requires that this request be denied.  *See* FED. R. CIV. P. 4(F)(3).

The Court finds that service of process must be made in compliance with the Hague Convention.  *See* FED. R. CIV. P. 4(f).  Similar to *Ungar*, the witness at issue here "currently resides in Egypt, [thus] service of process of the § 1783 subpoena must be in compliance with this directive."  *Ungar,* 412 F.Supp.2d at 335.  The Court must decline Plaintiff's proposal to serve Dr. Hussein via registered mail as "Egypt along with several other countries, explicitly objected to this provision [Article 10(a)], thus rendering nugatory service of process via postal channels within

Egypt." *Id.* This Court is persuaded by the reasoning set forth in *Ungar* where the court found that

> …service of process on Respondent, while residing in Egypt, must be in conformity with Articles 5, 6 or 11 of the Hague Convention. *See Hague Convention,* 20 U.S.T. 361 (permitting service of process by submitting legal documents to a Central Authority of signatory country, and the Central Authority, in turn, arranging service of process on individual located within country in accord with internal law). Unless there is a specific agreement between the United States and Egypt pursuant to Article 11 of the Hague Convention allowing for some other method of service of process-which this Court is unaware of-Plaintiffs must comply with the service of process requirement articulated in Articles 5 and 6 of the Hague Convention.

*Id.* Accordingly, this Court directs Plaintiff to execute service of process in compliance with Articles 5 and 6 of the Hague Service Convention.

Given Dr. Hussein's previous failure to comply with requests made by Plaintiff to voluntarily appear for a deposition in Egypt, this Court directs that the location of the deposition shall be at the offices of Plaintiff's counsel in New York. As the court noted in *Sabhlok*, this Court's subpoena would have no enforceability abroad outside the territorial jurisdiction of the United States. *See Sabhlok*, 2009 WL 3561523, at *7 (noting that since the court lacks jurisdiction in Hong Kong, a deposition abroad would undercut the compelling nature of the deposition). Similarly, here, in light of Dr. Hussein's failure to comply with past requests for his voluntary appearance at depositions in this action, the Court directs that the deposition be held in New York at the offices of Plaintiff's counsel.

Under § 1783(b) of the Walsh Act, "the serving party pay[s] the necessary travel costs of the witness, which are to be determined by the court." *Ungar*, 412 F. Supp. 2d at 332 (citing 28 U.S.C. § 1783(b)). In *MedImmune*, the court issued a subpoena pursuant to the Walsh Act

compelling a witness in Belgium to appear for a deposition and ordered plaintiff to "tender with the subpoena the sum of $12,000, which plaintiff estimate[d] should be sufficient to cover [the witness's] business-class travel, his accommodation in Washington, D.C. and his witness fees." *MedImmune*, 2010 WL 2179154, at *2. This Court hereby directs Plaintiff's counsel to provide the Court, within ten (10) days of this Decision and Order, an estimate (with supporting documentation) for Dr. Hussein's travel expenses,[3] costs, and witness fees involved in his appearance from Cairo, Egypt for a court-ordered deposition in New York. To afford Plaintiff time to comply with the requirements of Articles 5 and 6 of the Hague Convention for service of process in Egypt, the Court directs that Plaintiff's deposition of Dr. Mohammed Hussein be completed by February 28, 2014.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion to compel the appearance of Dr. Mohammed Hussein for a deposition in New York at the Law Offices of Ridley M. Whitaker, Esq., counsel for Plaintiff.

**SO ORDERED.**

Dated: Central Islip, New York
September 30, 2013

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge

---

[3]     The Court does not expect Plaintiff's counsel to provide an airline ticket (or equivalent payment) for anything more than a coach-class seat.