**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
DENNIS BALK,

                                                    **MEMORANDUM**
                                                    **AND ORDER**

                                                    CV 11-509 (JFB) (AKT)

                        Plaintiff,

                - against -

NEW YORK INSTITUTE OF TECHNOLOGY
and INFOTEC CORPORATION,

                        Defendants.
------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.       P̲R̲E̲L̲I̲M̲I̲N̲A̲R̲Y̲ ̲S̲T̲A̲T̲E̲M̲E̲N̲T̲

        Plaintiff Dennis Balk ("Plaintiff" or "Balk") seeks leave to amend his Second Amended

Complaint to add Dr. Mohamed Y. Hussein ("Dr. Hussein") as an individually named defendant,

pursuant to FED. R. CIV. P. 16 (b), 15(a) and 15(c).  *See* Pl.'s Ltr. Mot. to Amend the Second Am.

Compl. ("Pl.'s Mot.") [DE 113].  Balk brought this employment discrimination and breach of

contract action against Defendants New York Institute of Technology ("NYIT") and Infotec

Corporation ("Infotec") (collectively, "Defendants").  He seeks to add Dr. Hussein as a defendant

based upon recently discovered evidence that Dr. Hussein is the "alter ego" of Defendant Infotec.

*Id.* at 1.  The Defendants have not submitted any opposition to the motion.  Judge Bianco referred

Plaintiff's motion to this Court after conducting a pre-motion conference with counsel.  *See*

DE 115.  For the reasons set forth below, the Plaintiff's motion to amend the Second Amended

Complaint is GRANTED, in part, and DENIED, in part.

## II.    BACKGROUND

### A.    The Allegations

Plaintiff, who was formerly employed as the Director of the Computer Graphics Department at NYIT's campus in Bahrain, claims that Defendants NYIT and Infotec discriminated against him on the basis of his race, religion, and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.  Second Amended Complaint ("SAC") ¶¶ 58-69, 87-101 [DE 83].  Additionally, Plaintiff asserts claims for breach of contract against NYIT, unlawful interference with contractual rights against Infotec, and conspiracy to defraud against both Defendants.  *Id*. ¶¶ 70-86, 150-139.

### B.    Relevant Procedural History[1]

Plaintiff filed his original Complaint against Defendants on February 1, 2011.  *See* Compl. [DE 1].  On May 23, 2011, NYIT filed a motion to dismiss the Complaint.  DE 11.  On June 13, 2011, Plaintiff moved for entry of default against Infotec for failing to appear or otherwise move in response to the Complaint.  DE 15.  On that same day, Plaintiff filed his First Amended Complaint ("FAC") pursuant to FED. R. CIV. P. 15(a)(1)(B).  DE 16.

The Clerk of the Court entered a certificate of default against Infotec on June 20, 2011. DE 17.  That notation of default was later vacated by stipulation of the parties, which Judge Bianco "so-ordered" on August 4, 2011.  DE 35.  In the August 4, 2011 stipulation, counsel for Infotec accepted service of Plaintiff's FAC, among other things.  *Id.*  In a separate stipulation "so-ordered" by Judge Bianco on August 26, 2011, Infotec agreed to respond to the FAC no later than September 22, 2011.  DE 39.  Infotec filed its Answer on September 22, 2011.  DE 41.

---

[1]    The Court notes that this action has a lengthy and complex procedural history.  As such, the Court here discusses only that portion of the procedural history which is relevant to the instant motion to amend.

An Initial Conference was held before this Court on October 26, 2011, at which time NYIT requested a stay of discovery until the disposition of its motion to dismiss. *See* DE 45 ¶ 5. In light of the pending motion, the Court granted the request in part and stayed discovery, except for limited paper discovery, pending Judge Bianco's decision on the motion. *Id*. A Limited Case Management and Scheduling Order was then entered. DE 46. The parties were advised to contact this Court within five days of Judge Bianco's decision if the motion was denied in whole or in part so that a full scheduling order could be implemented. DE 45 ¶ 5. Notably, the Court explained that

> [u]nder existing Second Circuit case law, any amendments or modifications to this Order or to the accompanying Case Management and Scheduling Order must be approved in advance by the Court. Therefore, the parties are not free to grant each other extensions of any deadline set forth in these Orders. All requests for extensions or modifications of any deadlines stated in these Orders must be made by letter motion to the Court in advance of the expiration of the deadline. The parties are directed to my Individual Practice Rules for further information.

*Id*. ¶ 12.

On January 11, 2012, Judge Bianco heard oral argument on NYIT's motion to dismiss the Complaint. DE 59. After consideration of the parties' respective positions, Judge Bianco denied NYIT's motion to dismiss and granted Plaintiff leave to file the FAC within thirty days. *Id*.

This Court then held a Telephone Status Conference with counsel on January 18, 2012. DE 65. Of particular significance was the Court's directive that "[i]f any party wishes to amend its pleadings after the responses to written discovery have been evaluated, then counsel must file a letter request for a pre-motion conference to Judge Bianco for purposes of moving to amend no later than February 29, 2012." *Id*. ¶ 3. Again, the parties were reminded that any amendments to the scheduling order must be approved in advance by the Court. *Id*. ¶ 9.

As a result of the Conference, the Court issued an Amended Case Management and Scheduling Order ("CMSO") on January 18, 2012, which also set forth guidelines concerning any modification of the discovery deadlines as well amendment of the pleadings. DE 66. The Court advised the parties in its CMSO that these deadlines would "**be enforced, and will only be modified upon a timely showing of good cause**." *Id*. at VI(a) (emphasis in original). Moreover, the Court explained that "[a] request for an extension of any deadline submitted less than 30 days before that deadline will be considered untimely and will not be granted absent extraordinary circumstances." *Id*. at VI(b). The parties were given until February 29, 2012 to seek leave to join additional parties or amend the pleadings. *Id*. at I.

On February 10, 2012, NYIT filed its Answer to the FAC. DE 70. Thereafter, by means of a letter-motion dated February 24, 2012, Plaintiff requested an extension of time until March 30, 2012 to amend the pleadings or join additional parties. DE 71. On February 27, 2012, the Court granted the extension. *See* Feb. 27, 2012 Electronic Order.

In accordance with Judge Bianco's directives, on March 29, 2012, Plaintiff filed a letter-motion, annexing the proposed amended pleading, seeking leave to file the SAC. DE 80. NYIT's counsel confirmed that it consented to the filing of the SAC in an April 12, 2012 letter. DE 81. Judge Bianco granted Plaintiff leave to file its SAC on April 19, 2012. DE 82. Judge Bianco further directed NYIT to interpose its answer to the SAC by May 9, 2012 and cautioned that if Infotec failed to file an answer within the time period required in the Federal Rules of Civil

Procedure, Plaintiff may move for default judgment against Infotec on the SAC. *Id.*[2] The next day, on April 20, 2012, Plaintiff filed the SAC. DE 83. NYIT filed its Answer to the SAC on May 9, 2012. DE 90.

Both Plaintiff and NYIT filed separate letters on July 19, 2012 seeking an extension of time to complete discovery and for an adjournment of the deadline to initiate the dispositive motion process. DE 94, 95. Based on the circumstances presented, the Court granted that request, extending the discovery deadline to October 1, 2012 and the deadline for initiating the dispositive motion process to October 14, 2012. *See* July 20, 2012 Electronic Order. The Court advised the parties that all other deadlines set forth in the CMSO remained in effect. *Id*. Subsequently, the parties requested three brief extensions of time to complete discovery - - each of which was granted by the Court - - and discovery was ultimately closed on October 11, 2012. *See* DE 99, 103, 104; *see also* Oct. 9, 2012 Electronic Order.

### C. Plaintiff's Motion to Amend to Add Dr. Hussein

On November 15, 2012, Plaintiff filed a letter request for a pre-motion conference before Judge Bianco seeking leave to (1) modify the Court's March 30, 2012 deadline for the joinder of additional parties and amendment of pleadings and (2) serve and file the proposed Third Amended Complaint. *See* Pl.'s Mot. at 1; *See* Proposed Third Amended Complaint annexed as Ex. "1" ("TAC") to the Pl.'s Mot. [DE 113-1]. Counsel for Plaintiff argues that he has (1) good cause for modification of the Court's joinder/amendment deadline, (2) the TAC is a legally sufficient

---

[2]     Infotec never appeared and did not retain counsel. *See* DE 122. The Clerk of the Court noted Infotec's default on the record on March 13, 2013, pursuant to Fed. R. Civ. P. 55(a) and Local Civil Rule 55.1. *See id*. On August 15, 2013, Plaintiff moved for default judgment against Infotec. *See* DE 129. In an Order dated November 26, 2013, Judge Bianco denied Plaintiff's motion for default judgment, without prejudice, in light of the Court's finding that "Infotec's liability necessarily depends on the liability of NYIT" and, consequently, it would be "inappropriate to enter a default judgment at this time." DE 147 at 3.

pleading, and (3) the allegations against Dr. Hussein in the TAC "relate back" within the meaning of FED. R. CIV. P. 15(c)(1)(C)(ii). The Defendants have not submitted any opposition to the motion. During a November 20, 2012 conference with the parties, Judge Bianco referred Plaintiff's motion to amend to this Court for decision. *See* DE 115.[3]

## III.    LEGAL STANDARD

Under the Federal Rules of Civil Procedure, where a court has adopted a discovery scheduling order, as in the instant action, it may only "be modified for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). "Where a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Gullo v. City of New York*, No. 12 Civ. 4523, 2013 WL 5433367, *1 (2d Cir. 2013) (quoting *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003)). Determining whether a party has established "good cause" within the meaning of Rule 16(b) is dependent upon the party's diligence. *Eberle v. Town of Southampton,* No. 12 Civ. 4472, 2013 WL 6198298, at *2 (E.D.N.Y. Nov. 27, 2013); *Digennaro v. Whitehair*, 467 Fed. Appx. 42, 44 (2d Cir. 2012). The balancing act between Rules 15(a) and 16(b) is necessary to prevent a scheduling order from being rendered meaningless and undermine a court's ability to manage its docket. *Eberle*, 2013 WL 6198298, at *2.

Rule 15(a) of the Federal Rules of Civil Procedure provides that in cases where a party cannot amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *See* FED. R. CIV. P. 15(a); *see also Lucente v. Int'l*

---

[3]         Although a review of the minute entry does not expressly state that this motion was referred to this Court, the ruling referring the instant motion is found in the digital audio recording of the November 20, 2012 conference before Judge Bianco [FTR: 12:14 – 12:22].

*Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991); *Barber v. Hornbeck Offshore Operators, LLC*, No. 11 Civ. 5520, 2014 WL 1010993, at *5 (E.D.N.Y. Mar. 17, 2014); *M.E.S., Inc. v. Liberty Mut. Sur. Group*, No. 10 Civ. 2798, 2014 WL 46622, at *8 (E.D.N.Y. Jan. 6, 2014).  Leave to amend is within the court's discretion.  *Krupski v. Costa Crociere S. p. A.*, 130 S.Ct. 2485, 2489 (2010) (Rule 15(a) "gives a district court discretion to decide whether to grant a motion to amend a pleading before trial."); *MHANY Mgmt. v. County of Nassau*, 843 F. Supp. 2d 287, 340 (E.D.N.Y. 2012) (noting that "it is ultimately within the sound discretion of the court whether to grant leave to amend").  A court "should freely give leave when justice so requires."  FED. R. CIV. P. 15(a); *Iqbal v. Ashcroft*, 574 F.3d 820, 822 (2d Cir. 2009) (quoting FED. R. CIV. P. 15(a)); *Grace v. Rosenstock*, 228 F.3d 40, 56 (2d Cir. 2000) (same); *Guideone Specialty Mut. Ins. Co. v. Hapletah*, No. 05 Civ. 1401, 2006 WL 1455468, at *1 (E.D.N.Y. May 24, 2004) (Rule 15(a) "provides for a liberal amendment of pleadings."). "Amendments are generally favored because they tend to facilitate a proper decision on the merits."  *MHANY Mgmt.*, 843 F. Supp. 2d at 340; *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 302 (E.D.N.Y. 2013) (same) (citing *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 396 (E.D.N.Y. 1998)).

Notwithstanding the foregoing principles, leave to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc."  *Williams v. Citigroup Inc.*, 659 F.3d 208, 213-214 (2d Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *SCS Commc'n, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 345 (2d Cir. 2004) (noting that under Rule

15(a), "leave to amend a pleading may *only* be given when factors such as undue delay or undue prejudice to the opposing party are absent") (emphasis in original).

"To determine what constitutes prejudice, the Court considers whether the amendment would:  (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiffs from bringing a timely action in another jurisdiction."  *Hernandez v. Immortal Rise, Inc.,* No. 11 Civ. 4360, 2013 WL 1703529, at *4 (E.D.N.Y. Apr. 19, 2013) (internal quotations omitted) (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir.1993)); *Themis Capital, LLC v. Democratic Republic of Congo*, No. 09 Civ. 1652, 2013 WL 1687198, at *4 (S.D.N.Y. Apr. 18, 2013) (same).

In assessing a futility, courts must analyze "whether a proposed pleading would be able to withstand a dispositive pretrial motion."  *Themis Capital,* 2013 WL 1687198, at *6 (citing *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 339 (2d Cir. 2000); *Touchtunes Music Corp. v. Rowe Int'l Corp.,* 847 F. Supp. 2d 606, 621 (S.D.N.Y. 2012)).  With respect to these factors, "[t]he party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial or futile."  *See Cummings-Fowler v. Suffolk Community Coll.*, 282 F.R.D. 292, 296 (E.D.N.Y. 2012) (citing *Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998)).

Moreover, when an amended pleading changes a party or a party's name and the statute of limitations has run, the party seeking the amendment must also comply with Rule 15(c).  *Krupski* 130 S. Ct. at 2489.  Rule 15(c)(1) provides in pertinent part that an amendment relates back to the date of the original pleading when:

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out – or attempted to be set out – in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by the amendment:

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c). Unlike Rule 15(a), which, by its terms, gives discretion to the court in deciding whether to grant or deny a motion to amend, the language of Rule 15(c) is mandatory. *Krupski*, 130 S. Ct. at 2496. Thus, it is improper to consider factors such as "undue delay" or "dilatory motive" in considering whether an amended pleading relates back. *Id.*

## IV. DISCUSSION

### A. Good Cause Under Rule 16(b)(4)

Pursuant to Rule 16(b)(4), Plaintiff claims that he has asserted "good cause" to modify the March 30, 2012 deadline to join and/or amend parties in light of the "newly discovered" evidence revealed during two September 2012 fact depositions which first alerted Plaintiff to Dr. Hussein's alter ego status. *See* Pl.'s Mot. at 2. On September 18, 2012, Plaintiff deposed Infotec's "agent" in New York, Dr. Robert C. Vogt, at which time Dr. Vogt "refused to answer questions concerning the NYIT/Infotec Litigation." *Id.* During the deposition, Dr. Vogt was handed an exhibit, marked as "Plaintiff's Exhibit V-5" for identification. *See* Pl.'s Mot., Ex. "2" at 9:10-19. The transcript

identifies Exhibit V-5 as a "Consulting Agreement." *Id*. at 9:13-15. When asked whether he had ever seen the Consulting Agreement, Dr. Vogt responded "No." *Id*. at 9:20-22.

Later on, Dr. Vogt was asked by Plaintiff's counsel about the "other case." *See* Pl.'s Mot., Ex. "2" at 122:4-14. In response, Dr. Vogt stated that "I don't think that's any of your business. It had nothing to do with Balk." *Id*. In follow-up, Plaintiff's counsel asked whether the "other case" involved Infotec and Dr. Vogt answered "Yes." *Id*. at 122:15-16.

Two days later, on September 20, 2012, Plaintiff took the deposition of Stephen Kloepfer, Esq., the former general counsel of NYIT. *See* Pl.'s Mot. at 2. Plaintiff maintains that "Dr. Hussein's status as the alter ego of Infotec was first 'discovered' at the deposition of Stephen Kloepfer…when Mr. Kloepfer testified concerning a litigation brought by NYIT against Infotec." *Id*.

[TEXT REDACTED BY THE COURT]

Immediately following the Kloepfer deposition, Plaintiff conducted a "docket search in New York County and discovered for the first time on September 20 or 21, 2012 that NYIT had previously alleged, under oath, that Dr. Hussein was the alter ego of Infotec." *See* Pl's Supp. Mot. at 2. The sworn statement appears in a civil complaint filed against Dr. Hussein, Dr. Vogt and Infotec in New York State Supreme Court, New York County. *See id*. (citing *NYIT v. Hussein, Vogt, and Infotech Institute Limited* (N.Y. Co. Sup. Ct. Nov. 2, 2009), Index No. 2009-603335, Ver. Compl. annexed as Ex. "3" to Pl.'s Supp. Mot.). The complaint was verified by Leonard Aubrey, NYIT Treasurer and Chief Financial Officer ("CFO"). Indeed, under its tenth cause of action in that state case, NYIT alleged a claim of alter ego liability against Dr. Hussein. *See* Pl.'s

Supp. Mot., Ex. "3" ¶¶ 94-102.  The pertinent allegations against Dr. Hussein in that state pleading

are as follows:

> 95.  Hussein has made no secret of the fact that Infotech is a mere
> instrumentality of his business interests, is operated for his own
> personal benefit, and, for all practical purposes, "does not exist."

> 96.  Such contract payments as NYIT has received pursuant to the
> 2005 Agreement have not originated from bank accounts owned by
> Infotech, but rather from bank accounts controlled by Hussein,
> bearing fictitious names such as "New York Institute of Technology
> Jordan" or "New York Institute of Technology-Bahrain," or from
> Hussein's personal bank accounts.

> 97.  In meetings with senior NYIT representatives held in New York
> and in the Middle East, Hussein and Vogt have emphasized their
> desire that NYIT's contract with Infotech not be made known to the
> tax and other authorities in Jordan and Bahrain, and that Infotech's
> status as a corporation doing business in Jordan and Bahrain be
> actively concealed.  Indeed, some of the buildings and land NYIT
> occupies at its Amman, Jordan campus, pursuant to the 2005
> Agreement, are owned by Hussein <u>not</u> by Infotech.   The corporate
> form of Infotech has been disregarded and has apparently been used
> to perpetrate a fraud.

> 98.  Since at least December 2005, Hussein has dominated and
> controlled Infotech; has comingled funds and caused funds to be
> transferred between himself and Infotech, without appropriate
> documentation; has failed adequately to capitalize Infotech; and has
> failed to maintain an arm's-length relationship with Infotech.

> 99.  As a result, Infotech lacks a corporate identity distinct from
> Hussein.  Infotech and Hussein operate as a single economic entity
> serving only the personal business needs of Hussein.

> 100.  On information and belief, Hussein has siphoned millions of
> dollars from Infotech and transferred those funds either to himself, to
> other entities under his control, or to members of his family.

> 101.  Infotech has insufficient known assets to satisfy a judgment
> against it.  It would promote fraud or other injustice for the corporate
> form of Infotech to be recognized, thereby shielding Hussein from
> Infotech's just debts.

102.  Accordingly, Infotech's corporate veil should be pierced and
Hussein, as the alter ego of Infotech, should be liable to NYIT for all
of Infotech's obligations and liabilities in this matter.

*Id*.  Upon learning of Dr. Hussein's alter ego status in relation to Infotec, Plaintiff filed a letter

motion on November 15, 2012 seeking leave to amend to add Dr. Hussein as a named defendant in

this action.  *See generally* Pl.'s Mot.

The Court finds that Plaintiff demonstrated good cause in seeking a modification of the

March 30, 2012 deadline to join parties or amend pleadings.  Soon after discovering that Dr.

Hussein was a likely alter ego of Infotec, Plaintiff proceeded diligently with discovery to ascertain

a good faith basis to add Dr. Hussein as a party.  First, the record reflects that Plaintiff moved to

compel the deposition of Dr. Hussein himself after his failure to appear for a telephonic deposition

on September 24, 2012.  *See* DE 102 at 1-2.  Second, Plaintiff proceeded with the depositions of

numerous NYIT witnesses, including the Rule 30(b)(6) depositions of Director of Network

Services Brian Maroldo on September 21, 2012 and Treasurer/CFO Leonard Aubrey on

September 25, 2012.  *See* DE 103 at 1.  On October 4, 2012, the Court granted the parties' joint

application to extend discovery to continue the depositions of NYIT Rule 30(b)(6) witnesses Dr.

Richard Pizer and Bahrain Campus Dean Damon Revelas.  *Id* at 2.  Thereafter, Plaintiff filed a

letter seeking a pre-motion conference before Judge Bianco in order to move for partial summary

judgment.  *See* DE 107.

Moreover, on October 26, 2012, Plaintiff moved to compel the continued deposition of Dr.

Vogt who, as noted above, refused to answer questions concerning the state court action brought

by NYIT against Infotec.  *See* DE 110.  Significantly, Plaintiff's October 26, 2012 motion

contained a footnote referencing his discovery of information pointing to Dr. Hussein's status as an

alter ego of Infotec.  *See id*. at 2 fn. 3.  This Court ultimately granted Plaintiff's motion to compel

Dr. Vogt's continued deposition in an Order dated November 19, 2012.  DE 114.  The next day,

the parties appeared for a conference before Judge Bianco to discuss, *inter alia*, Plaintiff's motion

to amend which was ultimately referred to this Court.  In light of these circumstances, the Court

finds that Plaintiff's diligence warrants a modification of the Court's March 30, 2012 deadline to

amend the pleadings.  *See Eberle*, 2013 WL 6198298, at *2.

        Although the primary consideration in assessing "good cause" is a party's diligence, the

Court may also consider prejudice to the non-moving party.  Here, neither NYIT nor Infotec has

submitted any opposition to Plaintiff's motion.  *See Linares v. Richards*, No. 08 Civ. 3243, 2009

WL 2386083, at *9 (E.D.N.Y. Aug. 3, 2009) ("The non-moving party bears the burden of

establishing why leave to amend should not be granted.") (internal citations omitted).  In addition,

Defendants have been on notice throughout the litigation of Plaintiff's intention to seek discovery

from Dr. Hussein.  Indeed, the Court previously granted Plaintiff's motion to compel the

appearance of Dr. Hussein for a deposition.  *See* DE 133.  Further, as seen in the allegations set

forth in the state court litigation, both NYIT and Infotec have been on notice of allegations of Dr.

Hussein's alter ego status since at least 2009 when that state court action was commenced.  *See*

Pl.'s Supp. Mot., Ex. "3" ¶¶ 94-102.  Based on these circumstances, the Court finds no prejudice to

Defendants by granting Plaintiff leave to amend to add Dr. Hussein as a defendant.

        **B**.        **Futility Under Rule 15(a)**

        The Court must next assess whether Plaintiff's proposed amended pleading is a futility.

*See generally* TAC.  Plaintiff highlighted the new allegations found in his proposed TAC.

Specifically, under the section of the pleading discussing the parties in this action, Plaintiff has included the following paragraph concerning Dr. Hussein:

> As verified by NYIT's officer Leonard Aubrey on October 27, 2009, and October 29, 2010, as set forth in Exhibit "2", ¶ 13, Hussein is a citizen of the United States, and a citizen of Egypt, and is, as mentioned, President of Infotec and its overwhelming majority shareholder. Hussein regularly travels to New York in order to attend meetings relating to Infotec's contract with NYIT, with NYIT representatives at NYIT's campuses in New York City and in Old Westbury on Long Island, and in May of each year attends NYIT's annual graduation ceremonies in Old Westbury. Indeed, in a document signed by Hussein on June 28, 2005, during Hussein's visit to one of NYIT's New York campuses, it was agreed that "Dr. Hussein will come to New York for discussion with NYIT administrators on a regular basis - at least once every quarter, scheduled well in advance, in addition to when we request his attendance in New York." Since 2005, Hussein has kept to that schedule of quarterly meetings in New York, at one of NYIT's New York campuses, and NYIT maintains office space for Hussein for the express purpose of those meetings.

TAC ¶ 22. As an initial matter, Plaintiff has prefaced the alter ego claims against Dr. Hussein with the representation that they were previously verified by NYIT Treasurer/CFO Leonard Aubrey in NYIT's 2009/2010 state pleadings. *Id.* ¶ 150. In asserting this new claim, Plaintiff contends that Dr. Hussein and Infotec have "refused to pay NYIT significant amounts owed to NYIT under the express terms" of the agreement between the parties. *Id.* Dr. Hussein has "misappropriated and converted to his own use" the funds owed to NYIT. *Id.* According to the TAC, Dr. Hussein has "carried out a course of action under which he has used the funds paid by the students in Jordan and Bahrain to fund his own personal and business activities, and otherwise to convert to his own use both the cash flows and good will of NYIT." *Id.* ¶ 151. On behalf of NYIT, Infotec collects tuition and fees from NYIT students in Jordan and Bahrain and is required to make periodic payments to NYIT from the proceeds of those tuition and fee collections. *Id.* ¶ 153. The TAC

further asserts that "Infotec and its agents also assumed the obligation to collect, on behalf of itself and NYIT, tuition payments made by students in connection with the non-credit programs offered at NYIT's sites in Jordan and Bahrain; and, having custody and control of those tuition payments, to remit to NYIT – from the proceeds of those payments – the amounts due NYIT." *Id.* ¶ 154.

Further, Plaintiff alleges that in both Bahrain and Jordan, Dr. Hussein "personally directs and controls" the process by which Infotec collects "all tuition and fees owed by students enrolled in degree credit programs it manages for NYIT." *Id.* ¶ 155. Dr. Hussein and Infotec purportedly used "NYIT's name and credit to fraudulently obtain loans and enter into leases without the authorization or consent of NYIT." *Id.* ¶¶ 156-57. In light of these activities, Plaintiff asserts that:

> 158. As verified by NYIT's officer Leonard Aubrey on October 27, 2009, and October 29, 2010, as set forth in Exhibit "2", ¶ 53, from the inception of NYIT's contractual relationship with Infotec in 2001, Hussein has dominated and controlled Infotec as his instrumentality; Infotec's putative "separate corporate existence" has been a sham; Infotec's corporate form has been entirely disregarded by Hussein, when convenient to him and his personal business interests; and Infotec and Hussein have acted as a single entity in pursuing Hussein's business interests in the Middle East.

> 159. As verified by NYIT's officer Leonard Aubrey on October 27, 2009, and October 29, 2010, as set forth in Exhibit "2", ¶ 54, notwithstanding that NYIT has entered into various written agreements with Infotec, Hussein – directly and through his agents – has told senior NYIT executives, including Leonard Aubrey, NYIT's Chief Financial Officer and Treasurer, that "Infotec does not exist."

> 160. As verified by NYIT's officer Leonard Aubrey on October 27, 2009, and October 29, 2010, and as set forth in Exhibit "2, ¶ 55, for the receipt of tuition and fee payments made by current or prospective NYIT students in Bahrain and Jordan, Hussein has set up bank accounts in Bahrain and Jordan – not in the name of Infotec – but with fictitious account names such as "New York Institute of Technology-Bahrain," in Bahrain, and "New York Institute of Technology-Jordan," in Jordan. Hussein has also repeatedly stressed to NYIT executives, on several occasions since 2001, his desire that the fact that NYIT's contract is with Infotec not be made known to

> officials in Jordan and Bahrain because, in his words, Infotec "does not exist" in those jurisdictions. Regardless of what Hussein may have told the banks where the tuition funds are deposited, some of these accounts are in the names of fictitious entities and are controlled by Hussein, who holds the tuition funds in trust for the benefit of NYIT.

*Id.* ¶¶ 158-160. In addition, Plaintiff alleges that Dr. Hussein has, on several occasions since 2001, told NYIT executives not to disclose NYIT's contract with Infotec to Jordanian and Bahraini officials because Infotec does not exist in those jurisdictions. *Id.* ¶ 160. These actions, according to Plaintiff, are "consistent with a scheme to evade corporate taxes, corporate registration fees, and other charges that might be imposed on Infotec (and, derivatively, on its principal shareholder, Hussein) in Jordan and Bahrain, should the relevant facts be disclosed to the tax and other authorities in those jurisdictions." *Id.* ¶ 161. Likewise, according to the Plaintiff, Infotec assumed the obligation to provide NYIT with the buildings and physical facilities needed to operate a campus in Amman. *Id.* ¶ 162. However, NYIT's Leonard Aubrey verified that some of the land and buildings used by NYIT in Amman are owned by Dr. Hussein, or an entity owned by Dr. Hussein, and not by Infotec. *Id.*

Plaintiff claims that Infotec has "insufficient known assets to satisfy a judgment against it" and, as such, any judgment NYIT obtains against Infotec should be made enforceable directly against Dr. Hussein, as the alter ego of Infotec. TAC ¶ 163. According to the TAC, "since at least December 2005, Hussein has dominated and controlled Infotec; has comingled funds and caused funds to be transferred between himself and Infotec, without appropriate documentation; has failed adequately to capitalize Infotec; and has failed to maintain an arm's-length relationship with Infotec." *Id.* ¶ 167. In light of the fact that "Infotec lacks a corporate identity distinct from

Hussein," Plaintiff claims that "Infotec and Hussein operate as a single economic entity serving only the personal business needs of Hussein." *Id.* ¶ 168.

Plaintiff asserts, on information and belief, that Dr. Hussein has siphoned millions of dollars from Infotec and transferred those funds to himself, entities under his control, or to members of his family. *Id.* ¶ 169. "It would promote a fraud or other injustice for the corporate form of Infotec to be recognized, thereby shielding Hussein from Infotec's just debts." *Id.* ¶ 170. Based on these circumstances, Plaintiff argues that "Infotec's corporate veil should be pierced and Hussein, as the alter ego of Infotec, should be held liable to NYIT for all of Infotec's obligations and liabilities in this matter." *Id.* ¶ 171. Specifically, Plaintiff maintains that the corporate veil should be pierced and Dr. Hussein should be held liable for all claims asserted against Infotec in the TAC, including Intentional Interference with Contract Rights Against Infotec (Count V), Racial Discrimination Under Title VII Against Infotec as a Joint Employer with NYIT (Count VI), Religious Discrimination Under Title VII Against Infotec as a Joint Employer with NYIT (Count VII), National Origin Discrimination Under Title VII Against Infotec as a Joint Employer with NYIT (Count VIII), and Conspiracy to Commit Fraud Against NYIT and Infotec (Count IX). *Id.* ¶ 172.

The Court finds that Plaintiff has set forth a plausible claim of alter ego liability against Dr. Hussein. "To show that piercing is appropriate on an alter ego theory, [a]ctual domination, rather than the opportunity to exercise control, must be shown." *Wajilam Exps. (Singapore) Pte, Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 282 (S.D.N.Y. 2006) (internal citations and quotations omitted); *Automated Transaction LLC v. New York Community Bank*, No. 12 Civ. 3070, 2013 WL 992423, at *4 fn. 6 (E.D.N.Y. Mar. 13, 2013). "In making an alter ego determination, a court is

concerned with reality and not form, and with how the corporation operated." *Wajilam*, 475 F. Supp. 2d at 282 (internal citations and quotations omitted). "Unlike the theory of agency, which interprets a contractual relationship, alter ego examines the actual conduct of the parent vis-a-vis its subsidiary." *Id*. (same). "Under New York law, piercing the corporate veil for reasons of alter ego require plaintiff to prove that: (1) the owner exercised such control that the corporation has become a mere instrumentality of the owner, who is the real actor; (2) the owner used this control to commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to the plaintiff." *Giordano v. Thomson*, 438 F. Supp. 2d 35, 48 (E.D.N.Y. 2005) (internal citations omitted). "For a plaintiff's allegations to be sufficient, plaintiff must establish a causal relationship -- that the injustice to plaintiff resulted from the misuse of the corporate form." *Id*. (same).

Here, Plaintiff has sufficiently alleged that Infotec and Dr. Hussein operate as a single economic entity at the service of Dr. Hussein's personal business interests. TAC ¶ 166. As asserted by the Plaintiff, Dr. Hussein kept for himself the tuition and fees owed to NYIT in personal banking accounts with fictitious names. *Id*. ¶ 163. Further, Dr. Hussein actively concealed Infotec's status as a corporate entity in Jordan and Bahrain and stressed to NYIT executives that they should refrain from discussing Infotec with officials in those jurisdictions to evade state regulation and oversight. *Id*. ¶¶ 157-59. In addition, Dr. Hussein purportedly siphoned millions of dollars from Infotec, transferring the funds to himself, or entities controlled by himself, or to his family members. *Id*. ¶ 167. Plaintiff maintains that Dr. Hussein used his control of Infotec to perpetrate a fraud upon the Plaintiff and cause him significant damages. On these allegations, Plaintiff has adequately set forth the elements of causes of action sounding in tort,

namely, intentional interference with contractual rights and conspiracy to commit fraud against Infotec. If proven, these claims will allow Plaintiff to hold Dr. Hussein personally liable. Moreover, an individual may be held personally liable for violations of Title VII predicated on alter ego status. *See Avila-Blum v. Casa de Cambio Delgado, Inc.*, 510 F. Supp. 2d 423, 429 (S.D.N.Y. 2007); *Barbezat v. Arnell Group, Ltd.,* No. 96 Civ. 9790, 1997 WL 473484, *1 (S.D.N.Y. Aug. 19, 1997); *Leykis v. NYP Holdings, Inc.,* 899 F. Supp. 986, 991 (E.D.N.Y. 1995); *cf. Lane v. Maryhaven Center of Hope,* 944 F. Supp. 158, 163 (E.D.N.Y. 1996) (applying alter ego theory to Americans with Disabilities Act claim). Accordingly, the Court finds that the newly pleaded cause of action against Dr. Hussein alleging alter ego liability is not futile and states a plausible claim.

### C.   Timeliness of the Proposed New Amendments

The Court next considers the timeliness of Plaintiff's claims against Dr. Hussein. First, a conspiracy to defraud claim must be brought within six years of the date of the fraud or two years from the date of discovery, whichever period is longer. *See ADL, LLC v. Tirakian*, No. 06 Civ. 5076, 2010 WL 3925131, at *5 (E.D.N.Y. Aug. 26, 2010); *Asbeka Indus. v. Travelers Indem. Co.*, 831 F. Supp. 74, 80 (E.D.N.Y. 1993). Here, in light of Plaintiff's assertion of this claim against NYIT and Infotec in Plaintiff's March 29, 2012 SAC, the Defendants have been on notice of this claim since at least March 29, 2012. *See* SAC ¶¶ 105-139. Moreover, although the chain of events underlying the conspiracy appears to have commenced in February 2008, Plaintiff has set forth allegations which suggest that the conspiracy continued until at least February 23, 2010:

> 134.  In furtherance of the conspiracy described above, counsel for NYIT, acting on behalf of Infotec and NYIT, incorrectly stated on February 23, 2010, that "[o]n March 2, 2008, out of concern for his own personal safety, the Plaintiff had voluntarily left Bahrain..." and that "[u]pon information and belief, the Plaintiff's own conduct

> prevented himself from securing a residence visa to return to Bahrain which, in turn, prevented him from completing his teaching duties in Bahrain." (the "2010 Incorrect Statements")(Exhibit "B" to the Affirmation of Elan Raday in Support of NYIT's Motion to Dismiss [the State Court Action] dated February 23, 2010).
>
> 135. The 2010 Incorrect Statements are false because the reason given for Plaintiff leaving Bahrain was the False Accusations Against Plaintiff Concerning His Website, as stated by Dean Revelas, acting on behalf of NYIT and Infotec, on March 1, 2008. Plaintiff had no role whatsoever in the publication of the False Accusations Against Plaintiff Concerning His Website, as alleged in paragraph 51 above.

TAC ¶¶ 134-35. Given this timeline, Plaintiff is well within the six-year statute of limitations governing claims of conspiracy to defraud. As such, the Court finds that Plaintiff should be granted leave to amend against Dr. Hussein as an alter ego of Infotec on the conspiracy to defraud claim.

By contrast, the Court notes that the statute of limitations has run on any claim of intentional interference with contractual rights as to Dr. Hussein. *See Cantu v. Flanigan*, No. 05 Civ. 3580 , 2006 U.S. Dist. LEXIS 32983, at *11-12 (E.D.N.Y. May 24, 2006) ("New York has a slightly longer statute of limitations for intentional interference with contract: three years.") (citing *Spinap Corp. v. Cafagno*, 302 A.D.2d 588 (2d Dep't 2003); N.Y. C.P.L.R. § 214[4]). "Under New York law, a tortious interference with contract claim accrues when the plaintiff sustains damages (as a result of a third party's breach of the contract that was tortiously interfered with)." *Conte v. County of Nassau*, No. 06 Civ. 4746, 2013 WL 3878738, at *20 (E.D.N.Y. Jul. 26, 2013) (internal citations omitted). In the proposed amended pleading, Plaintiff contends that the injuries resulting from the actions of Infotec (*i.e.,* Dr. Hussein) in inducing NYIT to breach its contract with Plaintiff

occurred in March 2008.  TAC ¶¶ 82-88.  As such, a cause of action for tortious interference with contract would ordinarily be time-barred at this juncture.

Similarly, Plaintiff's proposed Title VII claims against Dr. Hussein would generally be barred by the statute of limitations.  "Exhaustion of administrative  remedies through the EEOC is 'an essential element' of [] Title VII . . . and, as such, a precondition to bringing such claims in federal court."  *Legnani v. Alitalia Linee Aeree Italiane*, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001). Before commencing a Title VII action, a plaintiff must file a timely EEOC charge. *See McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 213 (2d Cir. 2006) ("Under Title VII . . . a plaintiff can sue in federal court only after filing timely charges with the EEOC."); *Legnani*, 274 F.3d at 686 (finding that, under Title VII, "a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter.").  "A Title VII claim is time-barred if the plaintiff, after filing a charge with an appropriate state or local agency, does not file a charge with the EEOC within 300 days after 'the alleged unlawful employment practice.'" *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 133 (2d Cir. 2003) (quoting 42 U.S.C. § 2000e-5(e)(1)).  "This requirement functions as a statute of limitations . . . in that discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in  district court." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998).  In the present matter, although Plaintiff timely commenced his Title VII claims against NYIT and Infotec, he did not do so against Dr. Hussein.

Given the statute of limitations issues presented by Plaintiff's proposed intentional interference with contract and Title VII claims, the Court must assess whether these claims "relate

back" to the original Complaint within the meaning of Rule 15(c)(1)(C)(i) and (ii). [4]  Initially, the Court acknowledges that these claims arise out of the same "conduct, transaction, or occurrence set out" in the Complaint and, as such, satisfy Rule 15(c)(1)(B).  However, the Court must also determine whether, under subsection (i), Dr. Hussein "received such notice of the action that [he] will not be prejudiced in defending on the merits" *and* whether, under subsection (ii), he "knew or should have known that the action would have been brought against [him], but for a mistake concerning the proper party's identity," within 120 days of the filing of the Complaint.  FED. R. CIV. P. 15(c)(1)(C)(i) and (ii).

Here, Plaintiff contends that both Infotec and Dr. Hussein received notice of the instant lawsuit on April 25, 2011, within 120 days of the filing of the original complaint on February 1, 2011.  *See* DE 9.  On April 25, 2011, the Clerk of the Court caused the Summons and Complaint to be served in the care of Infotec's registered agent, A. Kakofengitis & Co., in the Republic of Cyprus by international registered mail, return receipt requested, in accordance with Rule 4(f)(2)(C)(ii) of the Federal Rules of Civil Procedure and Article 10(a) of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. *Id*.  The Plaintiff filed a certified Receipt for Registered Mail which demonstrates that service was

---

[4]     Notwithstanding the "relation back" questions, the Court points out that there is a serious issue whether the Title VII claims would lie against Dr. Hussein in the first instance since there is no individual liability under Title VII in this Circuit based upon the Second Circuit's seminal decision in *Tomka v. Seiler Corp*., 66 F.3d 1295, 1313 (2d Cir. 1995) *abrogated on other grounds*, *Burlington v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257 (1998) and its progeny.  *See*, *e.g*., *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012); *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003); *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000); *Carlus v. Connecticut Dep't of Public Health*, --- F.Supp.2d ---, 2014 WL 1004104, at *4 (D. Conn. Mar. 14, 2014).  As to this issue, Plaintiff makes an argument that an individual can be held liable for a violation of Title VII based on a theory of alter ego, relying on *Avila-Blum*, 519 F. Supp. 2d at 429 (citing *Barbezat,* 1997 WL 473484, at *1).  Because the Court finds that the Title VII claim as to Dr. Hussein is time-barred, the Court does not address this argument.

made at the Cyprus-based law firm on April 25, 2011. *Id.* In addition, Plaintiff wrote to Dr.

Hussein at his address in Cairo, Egypt as well as in the care of NYIT-Bahrain in Manama, Bahrain

on May 4 and 5, 2011, respectively, providing additional notice to both Infotec and Dr. Hussein of

the lawsuit. *See* Pl.'s Mot. at 2. Since these notices came within 120 days of the filing of the

original Complaint, Plaintiff argues that he has satisfied the requirements of Rule 15(c)(1)(C)(i)

and 15(c)(1)(C)(ii).

However, Dr. Hussein disputes receiving notice of the original Complaint within 120 days

of its filing. In order for Dr. Hussein to be brought in as a defendant for these two otherwise time-

barred claims, Plaintiff must show that Dr. Hussein was on notice of the February 1, 2011

Complaint within the Rule 4(m) period, or no later than June 1, 2011. *See* FED. R. CIV. P.

15(c)(1)(C). On June 27, 2011, Dr. Hussein submitted a declaration in support of Infotec's motion

to vacate a default entered by the Clerk of Court in this matter. *See* Decl. of Mohamed Yossry

Hussein in Supp. of Mot. to Set Aside Default and to Dismiss ("Hussein Decl.") [DE 23]. In

pertinent part, Dr. Hussein stated in his declaration that:

> 14. In its application for an entry of default, plaintiff stated that it
> served its original complaint on the law firm of Kakofengitis & Co.
> in Cyprus. That law firm was involved in the formation of Infotec,
> but we have not had regular contact with them in many years.
>
> 15. Infotec did not receive a copy of the original complaint from the
> law firm until we inquired about the matter after finding out that
> plaintiff was seeking to enter a default against us.

*Id.* ¶¶ 14-15. There is no indication that Infotec is represented by its "registered agent" in Cyprus

and, hence, neither Dr. Hussein nor Infotec could have been properly served with the Summons

and Complaint.[5]  In fact, Dr. Hussein denies that the Complaint was properly served on Infotec at that law firm.  Moreover, the law firm which ultimately appeared on behalf of Infotec in its motion to set aside the default and dismiss the Complaint was Westerman Ball Ederer Miller & Sharfstein - - not Kakofengitis & Co.  *See* Aff. of Jeffrey A. Miller, Esq. in Supp. of Mot. to Set Aside Default and to Dismiss ("Miller Aff.") [DE 22].   In his affirmation in support of the motion, Attorney Jeffrey A. Miller explained that "[o]n June 17, 2011, NYIT's counsel informed me that plaintiff had made an application for an entry of default against Infotec."  *Id.* ¶ 1.  "I was not aware a claim of service was made prior to that date."  *Id.*  In addition, Attorney Miller annexed to his affirmation a letter he sent to Plaintiff's counsel on June 23, 2011, which stated, in relevant part, that:

> According to your motion papers, you served the original complaint by mail on Kakofengitis & Co., a Cypriot law firm, which you claim is allegedly Infotec's "registered agent" in Cyprus.  Regardless of whether or not mail is an authorized form of service, and whether that law firm is Infotec's registered agent, the fact is that Infotec (a company based in Egypt) **never** received the original complaint from the law firm.  I only learned about your claim of default from New York Institute of Technology's counsel.

*See* 6/23/11 Ltr. from Attorney Miller to Plaintiff's Counsel annexed as Ex. "B" to the Miller Aff. [DE 22-3] (emphasis in original).[6]

Dr. Hussein's declaration presents further evidence that neither he nor Infotec received notice of the Complaint within the time set forth in Rule 15(c).  In that declaration, Hussein states:

---

[5]      As the Court noted above, counsel for Plaintiff and Infotec ultimately entered into a stipulation in which the parties agreed, *inter alia*, to vacate the Clerk's entry of default against Infotec and Infotec agreed to accept service of the FAC.  DE 39 ¶¶ 1-2.

[6]      The Court notes that on March 15, 2012, Judge Bianco granted the motion by the law firm of Westerman Ball Ederer Miller & Sharfstein to withdraw as counsel for Infotec.  *See* DE 77.

15. Plaintiff also claims that his counsel sent follow-up letters to me by international registered mail to my office in Cairo and to a post office box for NYIT's campus in Bahrain. *See* Kornfeld Aff. (Dkt. No. 15) at ¶¶ 8-9; Exhibits "C" and "D" to Kornfeld Aff.

16. While some individual apparently signed for the letters that were sent to NYIT's post office box in Bahrain, those letters were never forwarded to me. I don't know who signed for these letters.

17. Curiously, while plaintiff claims that his counsel's follow-up letters were also sent to my office in Cairo, plaintiff does not attach any registered mail certificates or other documentary evidence reflecting that. *See* Exhibits "C" and "D" to Kornfeld Aff. I never received those letters.

*Id.* ¶¶ 15-17. First, although Plaintiff has provided a return receipt for the correspondence sent to Dr. Hussein in Bahrain, Dr. Hussein maintains that he never actually received the correspondence or Complaint at that location. *See* 5/4/11 Ltr. from Pl. to Dr. Hussein annexed as Ex "C" to Aff. of Randy M. Kornfeld in Supp. of Pl.'s App. for a Certificate of Default Pursuant to FED. R. CIV. P. 55(a) and Local Civil Rule 55.1 Concerning Infotec Corporation Ex. "C" [DE 15-4]. Dr. Hussein concedes in his declaration that someone signed for the letter sent to his post office box in Bahrain but he argues that the letter was never personally forwarded to him. Hussein Decl. ¶ 16. Moreover, Plaintiff's counsel has not provided any proof to the contrary. *Id.* ¶ 17. Given these uncontroverted representations, Dr. Hussein was not on notice of the two claims at issue within the 120-day Rule 4(m) period. *See* FED. R. CIV. P. 15(c).[7] As such, the Court cannot conclude that the time-barred intentional interference with contract claim and the Title VII claim asserted against Dr. Hussein in the proposed amended pleading "relate back" for purposes of Rule 15(c).

---

[7] Given the Court's finding that Plaintiff has not satisfied Rule 15(c)(1)(C)(i), the Court does not need to analyze the second requirement under this provision, namely, whether Dr. Hussein "knew or should have known that the action would have been brought against [him], but for a mistake concerning the proper party's identity." FED. R. CIV. P. 15(c)(1)(C)(ii).

## V. **CONCLUSION**

For the foregoing reasons, Plaintiff's motion to amend the Second Amended Complaint is GRANTED, in part, and DENIED, in part. Specifically, Plaintiff may serve a Third Amended Complaint adding Dr. Mohamed Y. Hussein as a named Defendant on an alter ego liability theory for conspiracy to defraud. Plaintiff's motion to add claims against Dr. Hussein under Title VII and for intentional interference with contractual rights is DENIED. Plaintiff is directed to file a copy of the Third Amended Complaint on ECF within ten (10) days and to serve Dr. Hussein in the manner set forth in the Federal Rules. Plaintiff is required to file on ECF proof of such service upon Dr. Hussein.

The parties are directed to appear in Courtroom 910 for a Status Conference on April 28, 2014 at 10:30 a.m. to discuss any remaining discovery issues outlined in Plaintiff's letter of January 10, 2014 [DE 153].

**SO ORDERED.**

Dated: Central Islip, New York
March 24, 2014

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge

26