UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

DENNIS BALK,

           Plaintiff,

     - against -

NEW YORK INSTITUTE OF
TECHNOLOGY and INFOTEC
CORPORATION and MOHAMED YOSSRY
HUSSEIN,

           Defendants.

------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/9/15

OPINION AND ORDER

11-cv-509 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    INTRODUCTION

        Denis Balk brought ten claims against the New York Institute of Technology ("NYIT") and other defendants alleging, *inter alia*, discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and breach of contract and fraud under state common law. On December 15, 2014, NYIT and Balk filed cross-motions for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure. NYIT moved for summary judgment as to the First, Second, Third, Fourth, and Ninth Claims of Balk's Third Amended Complaint and Balk moved for summary judgment on his Sixth, Seventh, Eighth and Ninth Claims. On

-1-

September 16, 2015, NYIT's motion for summary judgment was granted in full and Balk's motion for summary judgment was denied in full, and all claims against NYIT were dismissed (the "September 16, 2015 Opinion").

On September 24, 2015, Balk filed a motion for reconsideration of the summary judgment decision with respect to the First, Second, Third, Sixth, Seventh, Eighth and Ninth Claims.[1] For the following reasons, Balk's motion is DENIED.

## II. LEGAL STANDARD

"Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'"[2] "'[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.'"[3] Typical grounds for reconsideration include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear

---

[1] Balk does not seek reconsideration of the dismissal of his breach of contract claims.

[2] *Oji v. Yonkers Police Dep't*, No. 12 Civ. 8125, 2013 WL 4935588, at *1 (S.D.N.Y. Sept. 11, 2013) (quoting *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003)).

[3] *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

error or prevent manifest injustice."[4]

## III. DISCUSSION[5]

Balk contends that "[t]he court has overlooked factual matters, rules and precedents cited by Balk which would change the Court's decision."[6] However, Balk fails to meet the strict standard for reconsideration because he raises no new or overlooked facts, intervening changes in the law, or clear errors creating the possibility of manifest injustice. Instead, Balk simply reargues points that were considered and rejected by the September 16, 2015 Opinion.[7]

### A. First, Second, and Third Claims: Title VII Claims Against NYIT

With respect to the First, Second, and Third Claims, which allege

---

[4] *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quotation omitted). *Accord Shrader*, 70 F.3d at 257 (describing grounds for reconsideration as "matters, in other words, that might reasonably be expected to alter the conclusion reached by the court").

[5] This Opinion incorporates the factual background and applicable law set forth in the September 16, 2015 Opinion.

[6] Corrected Version of Balk's Memorandum of Law in Support of Motion for Reconsideration ("Pl. Mem.") at 3.

[7] The record on summary judgment was extensive, and included the parties' combined six memoranda of law, Rule 56.1 Statements, 134 exhibits submitted by Balk, and 62 exhibits submitted by NYIT. As discussed herein, although neither the September 16, 2015 Opinion nor this Opinion provides a summary of all facts and arguments contained in the voluminous record in this case, the Court has considered all legal arguments asserted by the parties and all relevant, material facts contained in the parties' submissions.

discrimination by NYIT in violation of Title VII, Balk attempts to re-litigate the issue of Title VII liability. Title VII only provides relief if "a discrimination plaintiff withstand[s] the three-part burden-shifting [analysis] laid out by *McDonnell Douglas Corp. v. Green*."[8] The September 16, 2015 Opinion held that Balk had failed each of these prongs. Balk now asks the Court to revisit the record and reach the opposite conclusion, but Balk does not point to any facts or law warranting a different outcome.

### 1. Prima Facie Case of Discrimination

The September 16, 2015 Opinion concluded that Balk failed to establish the prima facie case "that the alleged discriminatory treatment against him was based on a protected characteristic."[9] In doing so, the September 16, 2015 Opinion considered and rejected Balk's arguments regarding NYIT's decision-making over the Student Complaint against Balk, newspaper articles published in the aftermath of the Student Complaint, removal of Balk from NYIT Bahrain, and non-renewal of Balk's teaching agreement.[10] Specifically, the September 16, 2015 Opinion observed,

---

[8] *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

[9] 9/16/15 Opinion at 23.

[10] *See id.* at 22-25.

> [Balk] admits to speaking with a group of students on February 18, 2008 about certain differences between Western and Islamic culture – a conversation that offended some students and resulted in negative publicity for himself and NYIT (and in response to which NYIT removed him from NYIT Bahrain). Balk's theory that NYIT bowed to public pressure in order to placate its students has nothing to do with discriminatory animus and Balk has offered nothing suggesting that NYIT would have treated a non-white, Muslim, and/or non-American citizen creating a similar controversy any differently.[11]

Now, Balk re-asserts two of his prior arguments – neither of which support reconsideration of the September 16, 2015 Opinion.

*First*, Balk re-alleges that (1) the Iskandrani sisters disregarded the instructions of NYIT's Dean of Students "to submit their written complaint only to his office"[12] and instead submitted the Student Complaint to NYIT Bahrain's Director of Admissions, Nouf Al Khalifa, because they "did not trust non-Muslims"[13] and (2) NYIT did not "direct Al Khalifa to refrain from interacting with the Iskandrani sisters or from further dissemination of false stigmatizing discriminatory accusations concerning Balk after Balk had notified NYIT of the unauthorized distribution of the [Student Complaint]."[14]  From these allegations,

---

[11]   *Id.* at 25.

[12]   Pl. Mem. at 17.

[13]   *Id.*

[14]   *Id.* at 18.

-5-

Balk again contends that "NYIT knew of the unauthorized distribution of the Student Complaint based upon Balk's protected characteristics as a non-Muslim"[15] and that this evidence creates "an inference that [NYIT's] decisions to remove Balk from Bahrain and to terminate his employment were also motivated by a desire to placate the discriminatory animus of . . . its Muslim students."[16]

However, neither of these allegations – both of which were considered and rejected by the September 16, 2015 Opinion – supports the inferential leap that Balk again urges this Court to make. As an initial matter, NYIT cannot be liable for religious preferences expressed by the Iskandrani sisters, who were students at the school. Further, Title VII does not require employers to protect their employees from perceived mistreatment – it simply prohibits employers from making adverse employment decisions for discriminatory reasons. As such, NYIT's alleged failure to curb what Balk deems the "unauthorized" distribution of the Student Complaint (and/or any attendant rumors) does not give rise to an inference that NYIT's decisions about Balk's employment were motivated by discriminatory animus. In fact, as noted in the September 16, 2015 Opinion, the record demonstrates quite the opposite: that "upon receiving the Student

---

[15] *Id.* at 8.

[16] *Id.* at 17.

Complaint, NYIT immediately launched an internal investigation and attempted to mediate the situation" but "ultimately found it prudent to discharge Balk from his teaching duties and facilitate his exit from Bahrain."[17]

*Second*, Balk contends that the Court failed to appreciate visiting NYIT Professor Christopher Moylan's statements about his allegedly discriminatory experiences while teaching at NYIT Bahrain.[18] Moylan's testimony, however, provided no basis for inferring that NYIT discriminated against Balk. Rather, Moylan conceded that he was teaching in New York – not at NYIT Bahrain – when the Student Complaint and relevant decisions regarding Balk's employment occurred.[19] As such, Moylan's testimony was limited to his views "concerning . . . NYIT's preference of Muslim faculty over non-Muslim faculty"[20] during his own time at NYIT Bahrain. Accordingly, the September 16, 2015 Opinion properly found that the general opinion of one individual without any personal knowledge of the circumstances surrounding Balk's removal failed to support the inference that

---

[17] 9/16/15 Opinion at 26.

[18] *See* 7/27/10 Statement of Christopher Moylan Before the New York State Division of Human Rights ("Moylan Statement"), Ex. 79 to 12/15/14 Affidavit of Balk's Attorney, Ridley M. Whitaker, at 5 (explaining that Moylan served as a visiting professor at NYIT Bahrain for a total of three five-week terms).

[19] *See id.* at 17.

[20] Pl. Mem. at 18. *Accord* Moylan Statement at 9.

NYIT's specific actions regarding Balk were discriminatory.

### 2. Pretext

The September 16, 2015 Opinion further held that NYIT had met its burden of "proffer[ing] legitimate, non-discriminatory reasons for its actions"[21] and that Balk had failed to meet his burden of establishing that NYIT's reasons were pretext for discrimination. Balk also disagrees with this holding, and recapitulates his arguments that NYIT's proffered reasons for its actions were, in fact, pretextual.

The September 16, 2015 Opinion observed that, according to NYIT, "its response to the Student Complaint and ensuing publicity, removal of Balk from NYIT Bahrain, and decision not to renew Balk's teaching agreement were business decisions made to protect Balk and the school."[22] Additionally, that Opinion noted NYIT's explanation that it "did not renew Balk's teaching agreement because, having determined that it was unwise and unsafe for him to continue at NYIT Bahrain, there were no suitable positions open for him at any of its campuses."[23] The September 16, 2015 Opinion found these reasons to be legitimate and non-discriminatory as they are "entirely unrelated to Balk's status as a white, non-

---

[21] 9/16/15 Opinion at 26.

[22] *Id.*

[23] *Id.* at 26-27.

-8-

Muslim, American citizen."[24] Balk repeats several of his arguments that NYIT's explanations are pretextual, but none support reconsideration.

*First*, Balk claims that NYIT's decision to remove him from NYIT Bahrain could not have been related to safety concerns because "NYIT has never provided any evidence that Balk was ever in any danger in Bahrain."[25] This argument is belied by Balk's own statements, including his February 26, 2008 email to NYIT Professor Robert Smith in which Balk expressed "'concern[] about [his] physical safety.'"[26]

*Second*, Balk asserts that "[t]here was a teaching position available to Balk in Jordan" and that NYIT's alleged failure to offer it to him establishes pretext.[27] Beyond his own speculation, however, Balk offers no evidence that NYIT chose not to offer him the position – let alone that any such decision was made because of Balk's race, religion, or national origin. Rather, as noted in the September 16, 2015 Opinion, the record contains significant evidence – including

---

[24] *Id.* at 27.

[25] Balk's Memorandum of Law in Reply and Further Support of Motion for Reconsideration ("Reply Mem.") at 6.

[26] 9/16/15 Opinion at 9 (citing 2/26/08 Email from Balk to Smith, Ex. N to 12/15/14 Affidavit of NYIT's Attorney, Samantha Beltre ("Beltre Aff."), at DB01484).

[27] Pl. Mem. at 21.

emails and testimony – substantiating NYIT's efforts to place Balk at an alternative campus.[28]

*Third*, Balk argues that "NYIT could not possibly have believed what it had been told by [NYIT Middle East Chairman] Dr. [Mohammad] Hussein,"[29] who wrote to NYIT President Dr. Edward Giuliano on February 25, 2008 explaining, *inter alia*, that the school was investigating a complaint that Balk had made anti-Islamic comments and that Balk "has been against Islam for quite a long time."[30] This argument is irrelevant, however, given that NYIT's proffered reasons for its actions do not hinge on Dr. Hussein's email. In fact, Balk's own deposition testimony corroborates NYIT's legitimate, non-discriminatory explanation for its actions, during which he explained that:

> [a] significant portion of the student body . . . would have been very unhappy if NYIT had not gotten rid of the faculty who alleged – who they alleged or it was alleged – made inappropriate

---

[28] Balk also argues that this Court should not have considered Carol Jablonsky's affidavit and supporting documentation because this evidence is precluded under Federal Rule of Evidence 37(c)(1). I need not address whether this evidence was improperly introduced as evidence, as the September 16, 2015 Opinion did not rely on it. Rather, this evidence – discussed as a single reference to the number and demographic composition of faculty members whose contracts were not renewed – was cited only as additional support for my conclusions that Balk had failed to establish pretext. *See* 9/16/15 Opinion at 27.

[29] Pl. Mem. at 19.

[30] Plaintiff's Response to Defendant NYIT's Rule 56.1 Statement ¶ 47.

comments to students and the false allegations in the press.  In other words, that can't stand.  You can't have a faculty person there with these allegations floating around.[31]

*Fourth*, Balk contends that NYIT's reasons are pretextual as there was no "overt uproar" as a result of the Student Complaint.[32]  Again, this argument is unavailing as NYIT's proffered reasons – which are based on business and safety concerns – do not turn on the existence of an overt uproar.

In any event, because Balk has not established the threshold prima facie case of discrimination, his First, Second, and Third Claims fail even before reaching the issue of pretext.

**B.     Sixth, Seventh, and Eighth Claims: Title VII Claims Against NYIT as a Joint Employer with Infotec**

Balk's Sixth, Seventh, and Eighth Claims – which sought to impose Title VII liability on NYIT as a "joint employer" with Infotec – are identical to his First, Second, and Third Claims against NYIT.  Accordingly, having held that the record did not provide an evidentiary basis for Balk's First, Second, and Third

---

[31]     6/25/12 Balk Deposition, Ex. C to Beltre Aff., at 45-46.  NYIT also stated that it did not give credence to Dr. Hussein's allegations, explaining that "[t]he investigation normally would have been . . . whether to believe Professor Balk or not but we believed him.  There were never any allegations that NYIT disbelieved him."  4/10/15 Transcript of Oral Argument at 38:4-7 (NYIT Attorney Neil Sparber).

[32]     Reply Mem. at 6.

Claims, the September 16, 2015 Opinion also dismissed Balk's Sixth, Seventh, and Eighth Claims to the extent that they were asserted against NYIT.

Balk now argues that his Sixth, Seventh, and Eighth Claims should not have been dismissed because he, not NYIT, moved for summary judgment on these claims.[33] As Balk acknowledges, however, "'[w]hen a party makes a motion for summary judgment, the Court may search the record and grant summary judgment, not just to the moving party, but to any party who may be entitled to it.'"[34] This is appropriate where "'the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried.'"[35]

---

[33] The Third Amended Complaint designates the Sixth, Seventh, and Eighth Claims as Title VII claims "Against Infotec as a Joint Employer with NYIT." Thus, prior to Balk's motion for summary judgment, it may not have been clear to NYIT that it faced liability under Balk's Sixth, Seventh, and Eighth Claims. In NYIT's Opposition to Balk's motion for reconsideration, NYIT states that "the sixth, seventh, and eighth claims for relief are only against Infotec and that is the reason NYIT did not move for summary judgment on those claims for relief." Defendant NYIT's Memorandum of Law in Opposition to Plaintiff's Motion for Reconsideration at 12 n.4.

[34] *First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 114-15 (2d Cir. 1999) (quoting *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir. 1996)).

[35] *Priestley v. Headminder,* Inc., 647 F.3d 497, 504 (2d Cir. 2011) (quoting *Schwan-Stabilo Cosmetics GmbH & Co. v. Pacific Link Int'l Corp.*, 401 F.3d 28, 33 (2d Cir. 2005)). *Accord Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (observing that "district courts are widely acknowledged to possess the

Because Balk was aware that he was required to put forth all possible evidence to defeat NYIT's motion for summary judgment with respect to his First, Second, and Third Claims under Title VII, it follows that he also had a full and fair opportunity to litigate the identical Title VII issues raised by his Sixth, Seventh, and Eighth Claims. Thus, given that the Court reviewed the extensive summary judgment record and found no basis for imposing Title VII liability with respect to the First, Second, and Third Claims, Balk's (identical) Sixth, Seventh, and Eighth Claims were also properly rejected. In fact, failing to dismiss the Sixth, Seventh, and Eighth Claims – which were effectively resolved by the September 16, 2015 Opinion – would have permitted further, unnecessary litigation of these claims and constituted a waste of judicial resources.[36]

### C. Ninth Claim: Conspiracy to Commit Fraud

Balk also argues that the Court should reconsider the dismissal of his Ninth Claim, which alleged that NYIT "defraud[ed] Balk into leaving [NYIT

---

power to enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all her evidence").

[36]    The September 16, 2015 Opinion also noted that Balk's motion for summary judgment on the Sixth, Seventh, and Eighth claims failed because NYIT and Infotec did not qualify as joint employers under *Lima v. Addecco*, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009). Balk now also asks this Court to reconsider the existence of a joint employer relationship. Having held, however, that the Sixth, Seventh, and Eighth Claims fail to meet the threshold requirement of Title VII discrimination, I need not opine on the joint employer issue again.

Bahrain] on February 25, 2008, pursuant to Dr. Hussein's decision on February 25, 2008[] to intentionally ban Balk from the Bahrain campus."[37] The September 16, 2015 Opinion held that Balk failed to meet his burden of presenting clear and convincing evidence that NYIT acted with the intent to defraud him, explaining that the evidence does not support finding

> that NYIT's decision to remove Balk from NYIT Bahrain was based on Dr. Hussein's February 25, 2008 email or made prior to the February 28, 2008 meeting with the Iskandrani sisters. Nor is there any evidence that the February 28, 2008 meeting was a "ruse" rather than part of NYIT's efforts to defuse the situation between Balk and the Iskandrani sisters. In sum, beyond his own speculation, Balk offers nothing to support his claim that NYIT conspired to defraud him.[38]

Reconsideration of this holding is unwarranted, as Balk simply re-asserts facts and arguments that were considered and rejected by the September 16, 2015 Opinion. *First*, Balk again argues that the decision to remove Balk from NYIT Bahrain was made prior to the February 28, 2008 meeting, pointing to Dr. Hussein's February 25, 2008 email and Dr. Giuliano's testimony regarding discussions he had with other NYIT administrators after the Student Complaint was filed but before the February 28, 2008 meeting. As I stated in the September 16, 2015 Opinion, however, the evidence does not establish when the removal decision

---

[37] Third Amended Complaint ¶ 105.

[38] 9/16/15 Opinion at 33.

-14-

was made and thus cannot satisfy Balk's burden of presenting clear and convincing evidence that there was a fraudulent agreement to remove him from Bahrain. *Second*, Balk argues that he was defrauded because NYIT administrators indicated that he would be able to return to Bahrain within three weeks. Even assuming that NYIT administrators did suggest that Balk was only to be temporarily removed from NYIT Bahrain, Balk provides no evidence – let alone clear and convincing evidence – that they did so with the deliberate intent to defraud him. In fact, Balk's motion for reconsideration cites Dr. Giuliano's testimony that "it was [NYIT's] understanding at that time that [Balk] was going to return to Bahrain."[39]

## VI. CONCLUSION

For the foregoing reasons, Balk's motion for reconsideration is DENIED. The Clerk of the Court is directed to close this motion [Dkt. No. 217].

---

[39] Pl. Mem. at 12. Balk also argues that the "special facts doctrine," which governs whether a party had a duty to disclose material omissions, applies to his relationship with NYIT. *See First Hill Partners, LLC v. Bluecrest Capital Mgmt.*, 52 F. Supp. 3d 625, 637 (S.D.N.Y. 2014) ("If a plaintiff is proceeding under a material omission theory, it must further allege that the defendant had a duty to disclose material information." (quotation marks and citation omitted)). Having held, however, that no material misrepresentation or omission occurred, it is unnecessary to reach the "special facts" analysis.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         November 9, 2015

**-Appearances-**

**For Plaintiff:**

Randy M. Kornfeld, Esq.
Kornfeld & Associates P.C.
250 Madison Avenue, 8th Floor
New York, NY 10016
(212) 759-6767

Ridley M. Whitaker, Esq.
Law Offices of Ridley M. Whitaker
830 Third Avenue, 5th Floor
New York, NY 10022
(212) 218-5656

Vincent E. Bauer, Esq.
Law Offices of Vincent E. Bauer
112 Madison Avenue, 5th Floor
New York, NY 10016
(212) 575-1517

**For Defendant NYIT:**

Douglas Peter Catalano, Esq.
Neil G. Sparber, Esq.
Samantha E. Beltre, Esq.
David Jason Kessler, Esq.
Norton Rose Fulbright US LLP
666 5th Avenue
New York, NY 10103
(212) 318-4000